Marc Toberoff (S.B. #188547)
mtoberoff@toberoffandassociates.com
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

*Attorneys for Defendants,*
*Michele Hart-Rico and*
*Buz Donato F. Rico III*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVEL CHARACTERS, INC., | Case No. 2:21-cv-07624-DMG |
| Plaintiff, | Hon. Dolly M. Gee |
| v. | **DEFENDANTS' ANSWER &** |
| MICHELE HART-RICO and BUZ DONATO F. RICO III, | **COUNTERCLAIM** |
| Defendants. | <u>DEMAND FOR JURY TRIAL</u> |
| MICHELE HART-RICO and BUZ DONATO F. RICO III, | |
| Counterclaimants, | |
| v. | |
| MARVEL CHARACTERS, INC. and DOES 1-10, inclusive, | |
| Counterclaim-Defendants. | |

Defendants Michele Hart-Rico and Buz Donato F. Rico III ("Defendants"), the heirs of Donato Francisco Rico II ("Don Rico"), admit that Plaintiff Marvel Characters, Inc. ("MCI") purports to initiate this proceeding against Defendants under 28 U.S.C. §§ 2201, *et seq*., and the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq*., but MCI's preamble paragraph otherwise contains conclusions of law as to which no responsive pleading is required.

## NATURE OF THE ACTION

1. Defendants admit only that they have exercised Don Rico's termination rights under the United States Copyright Act (the "1976 Act") by serving a notice of termination on plaintiff Marvel Characters, Inc. ("MCI" or "Plaintiff") regarding comic book characters and stories co-created by Don Rico, and that MCI has brought this civil action for declaratory relief as set forth in its Complaint, but Defendants otherwise deny the allegations in paragraph 1.

2. Defendants admit only that the district court in *Marvel Worldwide, Inc. v. Kirby*, granted Marvel Worldwide, Inc. summary judgment against the statutory heirs of Jack Kirby, 777 F. Supp. 2d 720 (S.D.N.Y. 2011), *aff'd in part*, 726 F.3d 119 (2d Cir. 2013), and to the extent relevant, if any, respectfully refer the Court to these decisions for their contents, but Defendants otherwise deny the allegations in paragraph 2.

3. Defendants respectfully refer the Court to *In re Marvel Entertainment Grp.*, 254 B.R. 817 (D. Del. 2000) for its contents, to the extent relevant, if any, but Defendants otherwise deny the allegations in paragraph 3.

4. Defendants admit only that that MCI purports to bring this civil action for declaratory relief pursuant to 28 U.S.C. § 2201, as set forth in its Complaint, but Defendants otherwise deny the allegations in paragraph 4.

## PARTIES

5. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5, and on that

basis deny the same.

6. Admitted that Michele Hart-Rico is the surviving spouse of Don Rico.

7. Admitted that Buz Donato F. Rico III is the surviving son of Don Rico.

## JURISDICTION AND VENUE

8. Defendants admit only that Plaintiff purported to bring an action for declaratory relief under 28 U.S.C. §§ 2201, *et seq*., and under the 1976 Act, 17 U.S.C. §§ 101, *et seq*. Paragraph 8 otherwise contains conclusions of law as to which no responsive pleading is required.

9. Defendants admit only that Michele Hart-Rico is domiciled in Los Angeles, CA; and otherwise, Paragraph 9 contains conclusions of law as to which no responsive pleading is required.

10. Defendants admit only that Buz Donato F. Rico III is domiciled in San Mateo, CA; and otherwise, Paragraph 10 contains conclusions of law as to which no responsive pleading is required.

11. Defendants admit that they are both domiciled in California, and that a substantial part of the events alleged by MCI to give rise to this action occurred in this District. Defendants deny that "most if not all the contributions by Don Rico were made in this District," and otherwise Paragraph 11 contains conclusions of law as to which no responsive pleading is required.

## ALLEGATIONS

12. Denied.

13. Denied.

14. Denied.

15. Denied.

16. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 and on that

basis deny the same. Defendants respectfully refer the Court to all documents referred to in paragraph 16 for evidence of the contents thereof.

17.    Defendants admit that on June 10, 2021, Defendants, the heirs of Don Rico, duly served a notice of termination on MCI and related entities pursuant to 17 U.S.C. § 304 (c) and the regulations promulgated thereunder. Defendants otherwise respectfully refer the Court to the document referred to in paragraph 17 for evidence of the contents thereof.

18.    Defendants admit the allegations in paragraph 18 only to the extent such allegations accurately reflect the contents of documents, and respectfully refer the Court to such documents for evidence of the contents thereof.

19.    Defendants admit the allegations in paragraph 19 only to the extent such allegations accurately reflect the contents of documents, and respectfully refer the Court to such documents for evidence of the contents thereof.

20.    Admitted.

### <u>COUNT I: ACTION FOR DECLARATORY RELIEF</u>

### **[As to the Validity of the Notice]**

21.    Defendants re-allege and incorporate by reference paragraphs 1-20 inclusive of their Answer, as though fully set forth herein.

22.    Admitted.

23.    Denied.

24.    Denied.

25.    Denied.

26.    Denied.

27.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 and on that basis deny the same.

28.    Admitted.

29.    Defendants lack knowledge or information sufficient to form a

belief as to the truth of the factual allegations contained in paragraph 29, and on that basis deny the same.

30. Defendants lack knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in paragraph 30, and on that basis deny the same. Paragraph 30 otherwise contains conclusions of law as to which no responsive pleading is required.

31. Defendants deny the allegations contained in paragraph 31, except admit that MCI purports to seek a declaratory judgment pursuant to 28 U.S.C.§ 2201.

## **PRAYER FOR RELIEF**

A. With respect to the relief requested in paragraph A. of the Prayer for Relief, Defendants specifically and generally deny that MCI is entitled to any of the relief requested in said paragraph.

B. With respect to the relief requested in paragraph B. of the Prayer for Relief, Defendants specifically and generally deny that MCI is entitled to any of the relief requested in said paragraph.

C. With respect to the relief requested in paragraph C. of the Prayer for Relief, Defendants specifically and generally deny that MCI is entitled to any of the relief requested in said paragraph.

## **AFFIRMATIVE DEFENSES**

Defendants hereby additionally allege the following as affirmative defenses:

### **FIRST AFFIRMATIVE DEFENSE**
#### **(Failure to State a Claim)**

1. The Complaint fails to state a claim upon which the relief sought or any relief could be granted.

### **SECOND AFFIRMATIVE DEFENSE**
#### **(Laches)**

2.      Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

### THIRD AFFIRMATIVE DEFENSE

### (Unclean Hands)

3.      Plaintiff's claims are barred, in whole or in part, by the equitable doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

4.      The Complaint and each purported claim therein is barred, in whole or in part, by the equitable doctrine of unjust enrichment.

### FIFTH AFFIRMATIVE DEFENSE

### (Claim Preclusion)

5.      The Complaint and each purported claim therein is barred, in whole or in part, by the doctrine of *res judicata* or claim preclusion.

### SIXTH AFFIRMATIVE DEFENSE

### (Issue Preclusion)

6.      The Complaint and each purported claim therein is barred, in whole or in part, by the doctrine of collateral estoppel or issue preclusion.

### SEVENTH AFFIRMATIVE DEFENSE

### (Duress)

7.      Plaintiff's claims are barred, in whole or in part, by the fact that any alleged contract between the parties or their respective predecessors-in-interest is unenforceable and/or void because of duress.

### EIGHTH AFFIRMATIVE DEFENSE

### (Statute of Frauds)

8.      Plaintiff's claims are barred, in whole or in part, by the fact that any alleged contract between the parties or their respective predecessors-in-interest is unenforceable and/or void because of the Statute of Frauds.

## NINTH AFFIRMATIVE DEFENSE
### (Failure of Consideration)

9.     Plaintiff's claims are barred, in whole or in part, by the fact that any alleged contract between the parties or their respective predecessors-in-interest is unenforceable and/or void because the contract(s) lacked consideration.

## TENTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

10.     The Complaint and each purported claim therein is barred, in whole or in part, by Plaintiff's failure to bring such claims within the governing statute of limitations.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Waiver)

11.     The Complaint and each purported claim therein is barred, in whole or in part, by the doctrine of waiver.

## TWELFTH AFFIRMATIVE DEFENSE
### (Acquiescence)

12.     The Complaint and each purported claim therein is barred, in whole or in part, by the doctrine of acquiescence.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Judicial Estoppel)

13.     The Complaint and each purported claim therein is barred, in whole or in part, by the equitable doctrine of judicial estoppel.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Equitable Estoppel)

14.     The Complaint and each purported claim therein is barred, in whole or in part, by the doctrine of equitable estoppel.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (Defendants' Termination Notice Not Invalidated by Technical Errors)

15.     Under 17 U.S.C. § 304(c) and 37 C.F.R. § 201.10, Defendants'

Termination Notice is not invalidated or curtailed due to technical errors or omissions, if any, since Defendants' intent to terminate all prior grants by Donato Francisco Rico II of his copyright interests in all works listed in the Notice is made clear to Plaintiff in the Termination Notice timely served on Plaintiff.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (Against Public Policy)

16.    Any contract alleged in the Complaint which is contrary to public policy is unenforceable, and any relief requested in the Complaint which is contrary to public policy should not be granted.

_____

17.    The Complaint fails to state the claims for relief with sufficient particularity to permit Defendants to discern and raise all appropriate defenses. Defendants may have additional affirmative defenses available to them, which are not now fully known or of which Defendants are not fully aware. Defendants accordingly reserve the right to amend or supplement this answer with additional affirmative defenses after the same have been ascertained.

FOR THESE REASONS, Defendants pray that the Court dismiss all of Plaintiff's claim(s) and find for Defendants on Plaintiff's Count One, and that Defendants be awarded costs, including reasonable attorneys' fees under Section 505 of the United States Copyright Act, and Defendants pray for such other and further relief as this Court deems just and proper.

# COUNTERCLAIM

Counterclaimants Michele Hart-Rico and Buz Donato F. Rico III (the "Rico Heirs" or "Counterclaimants"), the heirs of Donato Francisco Rico II ("Don Rico"), for their Counterclaim against Marvel Characters, Inc. ("MCI" or "Counterclaim-Defendant") allege as follows:

## NATURE OF THE ACTION

1.      Donato Francisco Rico II ("Don Rico") was a well-known comic book writer best known for co-creating "Black Widow" in 1964, in two original comic book stories entitled "The Crimson Dynamo Strikes Again" and "The Black Widow Strikes Again" (the "Stories"), published by MCI's alleged predecessors. The United States Copyright Act of 1976, 17 U.S.C. §304(c) ("Section 304(c)"), provides an author such as Don Rico and their family (e.g., surviving spouse, children) with the right to recover their fair share of the U.S. copyright to the author's creative work, after a lengthy period, by statutorily terminating *without cause* prior transfers of copyright within delineated time "windows."

2.      On June 10, 2021, the Rico Heirs properly availed themselves of their termination rights under Section 304(c) by serving MCI and their affiliates, within the prescribed window, with a notice of termination ("Termination Notice") regarding Don Rico's co-author share of the Stories based on his written material (the "Rico Material"). The Termination Notice becomes effective on June 11, 2023. This Counterclaim principally seeks a declaratory judgment that the Rico Heirs' Termination Notice is valid and effective under the Copyright Act.

3.      The Supreme Court clearly elucidated the objective of the Copyright Act's termination provisions:

The principal purpose of the [termination right] was to provide added benefits to authors ... to make the rewards for the creativity of

authors more substantial. More particularly, the termination right was expressly intended to relieve authors of the consequences of ill-advised and unremunerative grants that had been made before the author had a fair opportunity to appreciate the true value of his work product. That general purpose is plainly defined in the legislative history and, indeed, is fairly inferable from the text of § 304 itself.

*Mills Music, Inc. v. Snyder*, 469 U.S. 153, 172-73 (1985).

4. Congress recognized that publishers held far greater bargaining power and that, consequently, authors commonly agreed to one-sided grants, precluding them from sharing in their works' success. *Id.* The results were often supremely unfair, as when a work proved to have enduring commercial value but enriched *only* the publisher. Congress thus created termination rights to "safeguard[] authors against unremunerative transfers" made before their works were commercially exploited, and to give them a second chance to obtain a more equitable portion of their works' value when it is no longer conjectural. H.R. Rep. No. 94-1476, at 124; *see also N.Y. Times v. Tasini,* 533 U.S. 483, 496 n.1 (2001) (recognizing Congress' intent to adjust "the author/publisher balance" by an "inalienable authorial right to revoke a copyright transfer").

## JURISDICTION AND VENUE

5. This is an action for declaratory relief brought under 28 U.S.C. §§ 2201, *et seq*., and under the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq*. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has personal jurisdiction over the Counterclaim-Defendant MCI because MCI is regularly doing business in the State of California and in this district and maintains contacts within the State of California and this district.

7.     Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a), because MCI is conducting business in this district and is subject to personal jurisdiction in this district.

## PARTIES

8.     Counterclaimant Michele Hart-Rico is an individual and a citizen of and resides in the State of California, in the County of Los Angeles, and is and at all times has been a citizen of the United States. Michele Hart-Rico is the surviving spouse of Don Rico.

9.     Counterclaimant Buz Donato F. Rico III is an individual and a citizen of and resides in the State of California, in the County of San Mateo, and is and at all times has been a citizen of the United States. Buz Donato F. Rico III is the surviving son of Don Rico.

10.     Counterclaimants are informed and believe and based thereon allege that Counterclaim-Defendant MCI is a Delaware corporation, which has its principal place of business in Burbank, California, and which regularly conducts significant business in the State of California.

11.     Counterclaimants are informed and believe and based thereon allege that the fictitiously named Counterclaim-Defendants captioned hereinabove as Does 1 through 10, inclusive, and each of them, were in some manner responsible or legally liable for the actions, damages, events, transactions, and circumstances alleged herein. The true names and capacities of such fictitiously named Counterclaim-Defendants, whether individual, corporate, associate, or otherwise are presently unknown to Counterclaimants, and Counterclaimants will amend this Counterclaim to assert the true names and capacities of such fictitiously named Counterclaim-Defendants when the same have been ascertained. For convenience, each reference herein to MCI shall also refer to the Doe Counterclaim-Defendants and each of them.

12.   Counterclaimants are informed and believe and based thereon allege that each of the Counterclaim-Defendant and the Doe Counterclaim-Defendants was the agent, partner, servant, employee, or employer of each other, and that at all times herein mentioned, each of the Counterclaim-Defendant and the Doe Counterclaim-Defendants was acting within the course and scope of such employment, partnership and/or agency, and that each is jointly and severally responsible for the damages alleged herein.

## STATUTORY BACKGROUND

13.   The United States Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* (the "Copyright Act"), provides an author with the inalienable right to recapture the copyright to the author's creative material, after a lengthy waiting period, by statutorily terminating without cause any prior express or implied transfer of such copyright. Termination is easily carried out by serving advance notice of termination on the original grantee or its successors and filing the notice with the U.S. Copyright Office, within delineated time "windows." 17 U.S.C. § 304(c).

14.   Section 304(c) provides for the termination of a pre-1978 transfer of rights under copyright by the author during a five (5) year period commencing fifty-six (56) years after the date the author's work first secured a statutory copyright (by registration or publication, whichever is earlier). *Id.* § 304(c)(3). The requisite notice of termination sets forth the "effective date" of termination, within the five-year termination "window," when the previously transferred rights under U.S. copyright will be recaptured by the author. Notice of termination may be served by the author, or if the author is deceased, by the author's statutorily defined heirs or estate, at any time between ten (10) and two (2) years before the effective termination date. *Id.* § 304(c)(4)(A).

15.   True "works made for hire" are the sole exemption from the Copyrights Act's termination provisions. *Id.* § 304(c). Whether a work, created and published prior to January 1, 1978, is a "work made for hire," is determined

under and is defined in Section 26 of the 1909 Copyright Act. Pub.L. 60-349.

16.    The termination right is *the* most important authorial right provided by the Copyright Act, short of copyright itself. Congress was therefore very protective of this right and, to that end, enacted a number of provisions to prevent any waiver or encumbrance of an author's termination interest. For instance, "[t]ermination of the [prior copyright] grant may be effected notwithstanding any agreement to the contrary [.]" *Id*. § 304(c)(5).

17.    Furthermore, "[h]armless errors in a [termination] notice that do not materially affect the adequacy of the information required to serve the purposes of . . . section [304(c)] of title 17, U.S.C. . . . . shall not render the notice invalid." 37 CFR § 201.10(e)(1).

18.    Congress also anticipated that the exercise of an author's termination right would usually result in a new license by the author or author's estate to the terminated grantee (here, MCI). To that end, Congress provided that "grantee" with the exclusive opportunity to re-license an author's recaptured copyright "after the notice or termination has been served," but before "the effective date of the termination." 17 U.S.C. § 304(c)(6)(D). The termination provisions thus reflect a deliberate balance of competing interests by Congress.

19.    Under the termination provisions, all "derivative works" created prior to a termination notice's effective termination date "may continue to be" distributed and exploited by the grantee or grantee's successor, just as before. 17 U.S.C. § 304(c)(6)(A). The Rico Heirs' recovery of Don Rico's co-author share of the U.S. copyright to the Stories therefore does not prevent MCI and/or its licensees from continuing to freely exploit prior derivative works, including films, television series, and merchandising.

20.    In addition, because Don Rico *co-authored* the Stories, MCI and/or its licensees can continue to freely exploit the Stories, including in new derivative works, even *after* the effective termination date(s), subject only to a

duty to account to the Rico Heirs for an equitable share of proceeds therefrom, and this only in the unlikely event MCI does not enter into a preemptive new license with the Rico Heirs regarding such works.

21. Lastly, because the Copyright Act has *no extra-territorial application*, all rights to the Stories in all foreign territories, remain with MCI, notwithstanding the Termination Notice, providing additional incentives for the parties to cooperatively work together in the future.

22. As a result, the Termination Notice, if held effective, will likely result in a new license from the Rico Heirs to MCI, but one which more fairly reflects the time-tested market value of Don Rico's creative material. Accordingly, the exercise of statutory termination rights does not prevent the further exploitation of these works by MCI; it simply allows the Rico Heirs to fairly participate in the financial benefits of Don Rico's creative efforts, just as Congress intended. H.R. Rep. No. 94-1476, at 124 (1976).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

23. Don Rico is considered one of the great comic book creators, and throughout his career he co-authored numerous original illustrated comic book stories that were published by a variety of different publishers.

### Don Rico's Creation of the Stories in 1964

24. In or about 1964 (the applicable "Period"), Don Rico co-created the superhero character "Black Widow" in the original comic book Stories, co-authored by him, which are the subjects of the Termination Notice.

25. Because "work for hire" is the *only* exception to the Copyright Act's remedial termination provisions, MCI attempts to rewrite history in asserting that the Rico Material was "work made for hire," owned at inception by MCI's alleged predecessors. This bears no relation, however, to the facts or realities of comic book publishing in the relevant Period.

26.     By 1959, comic book publishing was on the brink of bankruptcy, due in large part to criticism in Fredric Wertham's book, "Seduction of the Innocent," the ensuing 1954 hearings before the Senate Subcommittee on Juvenile Delinquency, and the resulting censorship imposed by the "Comics Code Authority." Subsequently, the market for comic books underwent a severe contraction which endured well into the 1960s.

27.     As such, the purported comic book publishing entities which MCI alleges are its predecessor(s) from this Period (individually and collectively, "MCIPP") were largely shell companies, of no resemblance to the structured, established company Marvel is today.

28.     In 1962-63, for instance, the MCIPP did not even have their own office and consisted of one alleged employee with a small desk behind a partition in a room occupied by others. By 1964, the MCIPP had, at best, a tiny one or two-room office, and very few or no employees (depending on the MCIPP). The impecunious MCIPP fed the printing presses of other entities with inexpensive comic book material *purchased* for publication from a variety of "freelancers," like Don Rico, working from home on their own steam.

29.     The Rico Heirs are informed and believe and based thereon allege that after the Rico Material was purchased by one such entity, it was published by a different entity in the periodicals *Tales of Suspense*, Vol. 1, Nos. 52-53.

30.     The Rico Heirs are further informed and believe and based thereon allege that the copyright in these periodicals, containing the Stories, were registered with the United States Copyright Office by and in the name of a still different entity, Vista Publications, Inc. As such, there was little continuity or substance to the use or participation of these revolving entities or MCIPP to support MCI's conclusion that the Rico Material qualified as "work made for hire" under and as defined in the 1909 Copyright Act.

31.     Notably, the MCIPP's contemporaneous copyright registrations did *not* list or describe their copyrighted periodicals or the Stories therein as "works made for hire," as was common legal practice for copyright registrations of actual "works for hire."

32.     As a freelancer, Don Rico wrote the Rico Material, used in the illustrated Stories co-authored by him, largely on his own and at his own expense. The MCIPP conspicuously never entered into any employment or any other engagement agreement with Don Rico.

33.     Don Rico was *not* employed by any MCIPP, either as a traditional employee *or* even as an independent contractor.

34.     Don Rico was thus not guaranteed a salary, wage or compensation for his time or services by any MCIPP, which purposefully avoided such legally binding financial obligations. And because the MCIPP had no employment agreement with Don Rico, the MCIPP also had no legal right to control his *creation* of the Rico Material, at his home, on his own time, and at his own expense.

35.     The MCIPP, by design, was also under no legal obligation to accept for publication and pay for the material created by Don Rico, or by any other freelancer. Accordingly, like many comic book writers and artists during this time of economic uncertainty, Don Rico worked hand to mouth, at his own premises, using his own instruments and materials, and he thereby bore the entire financial risk of *creating* the Rico Material in question.

36.     Upon completion, Don Rico submitted his material to the MCIPP. If the MCIPP chose, in its sole discretion, to accept it for publication, it purchased the Rico Material by the page. The MCIPP did *not* pay for submitted pages that it rejected, in its sole discretion, nor did it own such rejected material, underscoring that the nature of this was a purchase, as a matter of law,

subsequent to creation, and that the Rico Material was not "work made for hire," owned at inception by an MCIPP.

37.     The Rico Heirs are informed and believe and based thereon allege that accordingly, the back of MCIPP checks issued to buy the Rico Material contained a printed legend, which stated that by endorsement of the check, the payee acknowledges his *assignment of the copyright* in his material—the legal opposite of a "work for hire."

38.     Once the MCIPP purchased the Rico Material, it, of course, was free to do with it what it pleased, including any alteration or additions thereto, and the copyright registration of the periodicals containing the Stories co-authored by Don Rico.

39.     Given the above facts and circumstances, the Rico Material was not "work made for hire" for any MCIPP under the 1909 Copyright Act.

**Rico's Heirs Exercise His Termination Rights under the Copyright Act**

40.     On June 10, 2021, the Rico Heirs, served by first class mail, postage prepaid, the Termination Notice, pursuant to the Copyright Act, 17 U.S.C. § 304(c), on MCI and its affiliates, duly terminating all express or implied grants or transfers by Don Rico to the MCIPP of his copyright interest in the Stories. A copy of this Termination Notice is attached hereto as Exhibit "A."

41.     The copyrights to the periodicals containing the Stories were renewed by MCI or its predecessor with the United States Copyright Office, and such renewal registrations served to renew the copyrights to the constituent Stories.

42.     The Termination Notice was drafted and served on MCI and related entities, and submitted to the United States Copyright Office for recordation, all in full compliance with the Copyright Act, 17 U.S.C. § 304(c), and the regulations promulgated thereunder by the Register of Copyrights, 37 C.F.R. § 201.10.

43.     The Termination Notice will terminate, on the effective termination date, June 11, 2023, all operative prior grants or transfers by Don Rico to any MCIPP of his copyright interests as a co-author of the Stories.

44.     On this effective termination date, the Rico Heirs will duly recover ownership of Don Rico's co-author copyright interest in the Stories for their extended renewal terms.

## COUNT ONE

(Declaratory Relief: Termination Notice Is Valid and Effective Under 17 U.S.C. § 304(c))

45.     The Rico Heirs re-allege and incorporate by reference paragraphs 1 through 44 of this Counterclaim inclusive, as though fully set forth herein.

46.     By reason of the foregoing facts, an actual and justiciable controversy has arisen and now exists between the parties under federal copyright law, concerning the validity and effect of the Termination Notice.

47.     The Rico Heirs contend, and MCI denies, that the Termination Notice is valid and effective under the Copyright Act, 17 U.S.C. § 304(c).

48.     Don Rico was never employed by MCI's alleged predecessor(s) as either an employee or as an independent contractor.

49.     MCI's alleged predecessor(s) therefore had no legal right to control Don Rico's creation of the Rico Material, and once completed, it had no legal obligation to pay Don Rico for his material unless it accepted the material for publication, in its sole discretion.

50.     The Rico Material was therefore not created by Don Rico at the "instance and expense" of MCI's alleged predecessor(s), and instead was purchased from Don Rico subsequent to his creation of the material on a freelance basis, at his own expense.

51.     The Rico Material comprising his contribution to the Stories was therefore by no means "work made for hire" under and as defined in Section 26

of the 1909 Copyright Act. Pub.L. 60-349.

52.    A declaration of the Court is necessary and appropriate at this time so that the parties may know their respective rights and obligations regarding the Termination Notice and the two Stories.

53.    Accordingly, the Rico Heirs seek, pursuant to 28 U.S.C. § 2201, a declaratory judgment from this Court that their Termination Notice is valid and effective under the Copyright Act.

## PRAYER FOR RELIEF

WHEREFORE, the Rico Heirs pray for a judgment against MCI as follows:

1.    For a declaration that their Termination Notice is valid under the Copyright Act, and as to the parties' rights and obligations regarding the Stories;

2.    For reasonable attorney's fees and costs of suit; and

3.    For such other and further relief as the Court deems just and equitable.

Respectfully submitted,

Date: December 6, 2021                    By: _____*/s/ Marc Toberoff*_____
                                                          Marc Toberoff

TOBEROFF & ASSOCIATES, P.C.
*mtoberoff@toberoffandassociates.com*
23823 Pacific Coast Hwy, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

*Attorneys for Michele Hart-Rico and*
*Buz Donato F. Rico III, heirs of*
*Donato Francisco Rico II*

## **<u>JURY TRIAL DEMANDED</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure,
Defendants and Counterclaimants Michele Hart-Rico and Buz Donato F. Rico III
hereby demand a trial by jury on each claim for relief and/or issue that is triable
by a jury.

Respectfully submitted,

Date: December 6, 2021

By: _____ */s/ Marc Toberoff* _____

Marc Toberoff

TOBEROFF & ASSOCIATES, P.C.
*mtoberoff@toberoffandassociates.com*
23823 Pacific Coast Hwy, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

*Attorneys for Michele Hart-Rico and*
*Buz Donato F. Rico III, heirs of*
*Donato Francisco Rico II*