# Exhibit 13



O'Melveny & Myers LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067-6035

T: +1 310 553 6700
F: +1 310 246 6779
omm.com

File Number: 0903423-00392

April 25, 2022

Molly M. Lens
D: +1 310 246 8593
mlens@omm.com

Marc Toberoff
Jaymie Parkkinen
Toberoff & Associates
23823 Malibu Road, Suite 50-363
Malibu, California 90265

**Re:** *Marvel Characters, Inc. v. Lieber*, No. 1:21-cv-07955-LAK; *Marvel Characters, Inc. v. Ditko*, No. 1:21-cv-07957-LAK; *Marvel Characters, Inc. v. Dettwiler*, No. 1:21-cv-07959-LAK; *Marvel Characters, Inc. v. Solo*, No. 1:21-cv-5316-DG-TAM; and *Marvel Characters, Inc. v. Rico, No. 2:21-cv-07624-DMG-KES*

Dear Marc and Jaymie:

We write to memorialize the parties' discussion and agreements during Thursday's meet and confer.[1]

## I.  Defendants' Requests for Production.

Thank you for confirming your agreement to the proposals in MCI's April 19 letter.  As discussed and agreed, now that the meet-and-confer process on MCI's responses is complete, MCI will provide its amended responses on or before May 5.

## II.  MCI's Requests for Production

Thank you for confirming that Defendants will provide amended responses and objections consistent with MCI's April 19 letter on or before May 5.

## III.  MCI's Subpoenas

### a. **Patrick Ditko's Objections and Responses**.

You confirmed that Patrick Ditko served objections merely in an abundance of caution and that you were not currently aware of any basis for Patrick Ditko to claim privilege and/or work product protection.

---

[1] We also explained that MCI did not expect to have its productions substantially complete by the end of May for a number of reasons.  That said, MCI is continuing to undertake good faith efforts to complete its productions and will continue to make periodic rolling productions.



    b. **Neil Adams**.

You explained that your representation in the Rule 26(a) Initial Disclosures of Keith Dettwiler, Nanci Solo, and Erik Colan that Neil Adams needed to be contacted through your firm was based on your firm's representation of Mr. Adams during the *Kirby* litigation. You additionally explained that you had not been able to reach Mr. Adams in response to your outreach about the pending matters. You did, however, agree to provide the contact information for Mr. Adams that you have, consistent with Rule 26(a), though we continue to await that information.

    c. **The Kirbys', James Steranko's, and Mark Ditko's Responses and Objections**

        i. "Contributions to the Works and/or Marvel" (Kirby Request No. 2; Steranko Request Nos. 1, 2, 4[2]; 5, & 6; M. Ditko Request Nos. 1[3], 2, 6, 7 & 8)

As explained, the inclusion of Marvel in the above-listed requests was to ensure that MCI received all documents relating to the Contributors' work for Marvel during the relevant time period, even if such documents do not specifically reference one of the Works. For this reason, MCI is willing to narrow these requests to documents that relate to the Contributors' work for Marvel during 1955 to 1985.

As to Steranko Request No. 1, we further agreed that those comic books which are without any notations or other alterations did not need to be produced, but that any comic books containing notations or alterations will be.

Finally, as to M. Ditko Request Nos. 7 & 8, we confirmed that communications that relate exclusively to Mark and/or Patrick Ditko's capacity as a consumer and/or fan of Marvel's products, e.g., communications between Mark Ditko and Patrick Ditko concerning their hypothetical fandom of Marvel character America Chavez, need not be produced. For avoidance of doubt, this limitation should not be understood to exclude any communications concerning Steve Ditko, the other Contributors, and/or any Works to which they allegedly contributed.

With these clarifications, we understand that the Kirbys, James Steranko, and Mark Ditko will agree to produce documents in response to these requests.

        ii. Communications concerning the Pending Lawsuits (Kirby Request No. 3)

You asserted burden concerns with respect to responsive communications between and among the Kirbys, as opposed to those between the Kirbys and other third-parties. Without conceding that such an ask would be burdensome, we are willing to narrow this request to exclude

---

[2] As to Steranko Request No. 4, MCI further agreed to narrow the subject matter as per its April 11 letter.

[3] M. Ditko and Steranko Request Nos. 1 do not use any formulation of "Marvel" but we nevertheless understand from our conversation that the parties' discussion regarding "contributions to the Works and/or Marvel" (or variations thereof) resolved any concern about these requests as well.



communications solely between and among the Kirbys.  Please confirm that the Kirbys will agree to produce documents in response to this request.  If not, MCI reserves the right to move on the Request, as originally drafted.

       iii.    Working as a Contributor in the 1960s and 1970s (Steranko Request No. 7)

You confirmed that James Steranko would produce responsive documents to this request, as clarified in our April 11 letter.

       iv.    Testimony (Steranko Request No. 8)

We agree to limit this request to sworn testimony (written or oral) for the following individuals: Stan Lee, Martin Goodman, James Steranko, Neil Adams, Gerry Conway, Roy Thomas, Larry Lieber, Steve Ditko, Patrick Ditko, Mark Ditko, Gene Colan, Nanci Solo, Erik Colan, Don Rico, Buz Donato-Rico III, Michele Hart-Rico, Don Heck, and Keith Dettwiler.  Please confirm this is acceptable and that James Steranko will produce documents in response to this narrowed request.

       v.    David Currie (M. Ditko Request No. 5).

We continue to disagree that this request is overly broad.  That said, in an effort to avoid motion practice, aside from Steve Ditko's correspondence with David Currie, we are willing to narrow this request to exclude any documents that relate solely and exclusively to Steve Ditko's personal life.  However, we seek all of Steve Ditko's communications with David Currie, regardless of subject matter.  Again, we believe it is fairly obvious how Mark Ditko's communications pertaining to a book about the "Life of the Artist Behind Spider-Man *and the Rise of Marvel Comics*," published just months before the Ditko Estate's termination notice was filed, are relevant.  Indeed, in the introduction to the book, Currie writes "[u]sing Ditko's own previously unpublished words, along with interviews of many other creators, the story of Steve Ditko and of American comic books of the 20th Century—along with the rise of media giant Marvel—is told in this book."  Thus, for example, the candid exchanges between Ditko himself and the man who wrote about him and his work may shed light on Ditko's views on who owns the work he did for Marvel, how Spider-Man and other characters were created, and on Marvel and the Marvel Method generally.  Please confirm that Mark Ditko will produce responsive documents, as requested.

       vi.    General Objections

You confirmed that none of the subpoenaed parties would withhold and/or refuse to produce any documents on the basis that they were publicly available.  In addition, we ask that the subpoenaed parties confirm their agreement to produce all responsive documents, even those post-dating September 2021, for the requests identified in MCI's April 11 letter.  You also confirmed that all responsive but withheld documents would be logged.

      vii.    Amended Responses

We have requested that the subpoenaed parties provide amended responses consistent with the parties' agreements, just as the parties have agreed to do. We ask that you confirm the subpoenaed parties' agreement to do so and that they will do so by May 5.

### IV. Privilege Logs.

The parties confirmed their mutual agreement to log documents withheld on the basis of attorney-client privilege or the work-product doctrine on an individual basis, subject to each parties' reservation of rights to contend that categorical logs should be used for good cause.

While the parties did not discuss this issue, we understand that Defendants will be providing a privilege log within 30 days of any productions for any documents withheld from such production. Provided Defendants confirm their agreement, MCI will do the same.

### V. Protective Orders

You have asked us to make a proposal for a more definitive process for raising any challenges to the Court regarding confidentiality designations. We will address this issue in separate correspondence.

Sincerely,

*[signature]*

Molly M. Lens
Of O'Melveny & Myers LLP