# Exhibit 18



O'Melveny & Myers LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067-6035

T: +1 310 553 6700
F: +1 310 246 6779
omm.com

File Number: 0903423-00392

May 24, 2022

Molly M. Lens
D: +1 310 246 8593
mlens@omm.com

Marc Toberoff
Jaymie Parkkinen
Toberoff & Associates
23823 Malibu Road, Suite 50-363
Malibu, California 90265

**Re:** ***Marvel Characters, Inc. v. Lieber*, No. 1:21-cv-07955-LAK; *Marvel Characters, Inc. v. Ditko*, No. 1:21-cv-07957-LAK; *Marvel Characters, Inc. v. Dettwiler*, No. 1:21-cv-07959-LAK; *Marvel Characters, Inc. v. Solo*, No. 1:21-cv-5316-DG-TAM; and *Marvel Characters, Inc. v. Rico*, No. 2:21-cv-07624-DMG-KES**

Dear Marc and Jaymie:

We write to follow up on a number of open discovery items, including our May 11 meet and confer and your subsequent letter addressing the same.[1]

### *Kirby* Productions

As you know, Marvel undertook the burden of having the *Kirby* protective order modified so that, *inter alia*, the document productions in that case could be used in the pending litigations. In addition, Marvel agreed to produce its productions from *Kirby* in the pending cases. During the May 11 meet and confer (and as reiterated in your subsequent letter), defendants have now demanded that Marvel also agree to produce the Kirbys' productions as well as any third-party productions.

Marvel does not agree to or even understand this demand. As your letter confirms, the Kirbys themselves (who your firm represents) have already agreed to produce their productions from *Kirby* in response to Marvel's subpoenas. There is no reason for Marvel to undertake the burden of producing these same documents again. It will also be confusing if multiple versions of the same documents are produced with different bates numbers. Moreover, in addition to the Kirbys, your law firm represented Mark Evanier and John Morrow, and thus your firm should undertake the burden of producing these documents.

Marvel reiterates its suggestion that the parties exchange a list of the bates ranges of the documents that they have from the *Kirby* case. This will enable the parties to ensure that a complete set of the documents is produced. While Marvel does not believe it has a complete

---

[1] The parties have already discussed several of the issues in your May 11 letter in separate correspondence, which, for efficiency, are not addressed again here.



set of the documents from *Kirby*, Marvel is willing to produce any documents it has that defendants and the Kirbys do not have. Marvel asks defendants to reconsider their prior rejection of this efficient proposal, which will inure to the benefit of all parties.[2]

**Defendants' Productions**

Marvel served its First Sets of Requests for Production back on February 17. None of the defendants, however, produced any documents until May 1.[3] Moreover, as discussed in separate correspondence, the format of defendants' productions renders them unusable.

While defendants have agreed to remedy the deficiencies in the format of their prior productions, defendants have yet to reproduce their documents. Given how small defendants' productions are—for example, Keith Dettwiler produced only 11 pages—the ongoing delay is unjustifiable and continues to materially prejudice Marvel. Marvel thus asks—again—that defendants re-produce their productions without additional delay.

Moreover, even though the format of defendants' productions limits Marvel's ability to review their documents, it is apparent that defendants have not complied with their discovery obligations. As noted above, defendants' productions are—to put it mildly—concerningly small. Case in point, Dettwiler produced only 11 pages, the Rico defendants produced only 47 pages, Larry Lieber produced only 180 pages, the Colan defendants produced only 197 pages, and Patrick Ditko produced only 237 pages.[4]

Not surprisingly then, even a cursory review demonstrates that defendants have not produced responsive documents within their possession, custody, or control. For example, Buz Rico created a website commemorating his father's work, including for Marvel.[5] In that website, Buz Rico quoted a number of responsive documents, including, for example, a reference letter from Stan Lee and an autobiographical statement by Don Rico about his work at Marvel. Buz Rico, however, has not produced any of the documents referenced in his own website. Please confirm that he will promptly do so.

Based on the incomplete nature of defendants' productions, we can only assume that defendants have not yet completed their productions. Accordingly, please advise when

---

[2] While your letter emphasizes Marvel's intent to use the *Kirby* records in this case, defendants similarly identified "[t]he record evidence in *Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720 (S.D.N.Y. 2011)" in their Rule 26(a) Initial Disclosures. And, in any event, the question is not whether the documents from *Kirby* should be produced, but rather who should bear the burden of producing the documents and whether the very same documents should be produced more than once.

[3] Defendants immediately clawed back their April 29 productions.

[4] We reference pages, as opposed to documents, because we do not know how many documents defendants produced, given that their productions improperly lumped all documents together in a single agglomerated file.

[5] https://web.archive.org/web/20081119145955/http://www.deadwax.net/donrico/index.html.



defendants intend to complete their productions, including as to the documents referenced above.

Finally, we have not received a response to our May 11 letter, which sought answers to a series of urgent inquiries. The importance of these inquiries, coupled with defendants' deficient productions to date, requires defendants to provide their written response without any further delay.

**Marvel's Subpoena to Mark Ditko**

With respect to RFP No. 5, during the May 11 meet and confer, you agreed to confirm not only whether Mark Ditko has correspondence between David Currie and Steve Ditko but also, if so, whether he contends that any such correspondence does not relate to the pending cases.[6] Given that you've now had nearly two weeks to so confirm with Mark Ditko, we ask for an update so that we can conclude our discussions on this request.

With respect to RFP Nos. 7 and 8, we cannot agree to an unlimited "fandom" limitation. However, we are willing to provide an alternative to the previous formulation that you rejected. We propose that RFP Nos. 7 and 8 be construed to exclude communications that relate exclusively to Mark and/or Patrick Ditko's capacity as a consumer and/or fan of Marvel's products, provided that the subject communication does not also concern Steve Ditko, Don Heck, Larry Lieber, Gene Colan, and/or Don Rico and/or any of their contributions to the Works as that term is defined in the subpoena. Please confirm this formulation addresses Mark Ditko's concerns.

Finally, Mark Ditko has only made a limited production of documents in response to Marvel's March 18 subpoena. Please confirm when Mark Ditko intends to complete his productions.

**Marvel's Other Subpoenas**

The Kirbys have produced only one document in response to Marvel's March 18 subpoenas. James Steranko has yet to produce any documents. Please explain the delay in these productions and confirm when the Kirbys and Steranko intend to complete their productions.

---

[6] As a point of reference, a non-exclusive list of *related* topics includes: Steve Ditko's or the other Contributors' contributions to Marvel; the Works, Including but not limited to the ownership thereof; Steve Ditko's or the other Contributors' employment relationship with Marvel; Steve Ditko's or the other Contributors' working relationship with any superiors of theirs at Marvel; Steve Ditko's or the other Contributors' working relationship with any of their collaborators at Marvel and/or on any of the Works; the "Marvel Method"; the process pursuant to which Steve Ditko or the other Contributors developed their contributions to the Works and/or Marvel; the manner in which Steve Ditko or the other Contributors were compensated and/or taxed on such compensation for their work for Marvel; and the extent and nature of Steve Ditko's or the other Contributors' work for persons or entities other than Marvel.



**Marvel's Second Requests for Production**

Thank you for confirming defendants' agreement to amend their responses to clarify that they will produce documents irrespective of whether they are in the public record. You also agreed to reflect the fact and timing of the privilege logs that defendants will furnish, consistent with the parties' agreement, in your amended responses.

With respect to RFP No. 42, defendants may construe the request as soliciting Communications and/or Documents sufficient to evidence all comics, characters, stories, illustrations, or other narrative or graphic works by the relevant Contributor that were submitted to and/or published by a publisher or comic book company other than Marvel.

We appreciate and agree to defendants' intended amendment to their responses to RFP No. 43, as stated in your May 11 letter.

With respect to RFP No. 48, we agree to the additional limitation that defendants need not produce interviews that (a) exclusively concern subsequent developments to the Works or franchises thereof after 1985, *and* (b) do not reference Steve Ditko, Don Heck, Larry Lieber, Gene Colan, and/or Don Rico.

Your May 11 letter accurately reflects our agreement on RFP No. 49, which, for the sake of brevity, we do not repeat here.

**Defendants' Interrogatory Responses**

We continue to be disappointed by the gamesmanship that pervades defendants' interrogatory responses. Defendants must amend—and thereafter, supplement on an ongoing basis—their incomplete interrogatory responses. We have enumerated several examples in our prior conferral correspondence, though this issue is widespread throughout defendants' responses. *See* M. Lens May 6, 2022 Letter at 3. We expect that you and defendants will review and revise each response to ensure its comprehensiveness. As we have emphasized, "[w]hen an interrogatory asks for 'all' of anything, the responding party may not respond with examples." *Herdlein Techs., Inc. v. Century Contractors, Inc.*, 147 F.R.D. 103, 106 (W.D.N.C. 1993). We expect that you will take a particularly close look at the responses to Interrogatories Nos. 1 and 2, which are woefully deficient.

During our discussion, you opined that some of defendants' omissions may arise from differences in your interpretation of the interrogatories. First, you noted that you did not realize that "Persons" included individuals who are now deceased. Now that you understand the scope of the term, defendants must amend their responses accordingly.

Second, as to the failure to list David Currie's written interviews with Steve Ditko (which served as a basis for his recent book *Ditko Shrugged*), you said you thought our interpretations of the term "interview" may not be the same. We struggle to grasp your narrow view of this term, especially given that Marvel's interrogatories specified that responsive interviews may be "written or oral." And, in any event, the deficiencies in defendants' responses cannot all be

4



attributed to this purported misunderstanding.  For example, Larry Lieber did not list his personal interviews with Abraham Riesman, which are expressly cited as such in the footnotes to Riesman's recent book entitled *True Believer*.  We expect that defendants will amend their responses to include *all* responsive interviews, whether written or oral, and that they will be more diligent in any investigation this time around.

Third, you said defendants' responses identifying those who contributed to the subject works *deliberately* excluded editors, inkers, colorists, and the like.  We were, and remain, very troubled by your usage of that artificial limitation.  You said you would only include individuals who, *in your judgment*, made "creative contributions" such that they would be "co-authors" of the Works.  But that is not Marvel's Interrogatory.  The Interrogatory at no point references co-authorship, and it does not qualify the word "contributed" with "creative"—though we also object to your unfounded, categorical statement that editors, inkers, and colorists do not exercise creativity (a statement that would offend many an editor, inker, and colorist).  Indeed, even some of your own clients have, at times, performed inking tasks, and we would be surprised to hear they do not believe they "contributed" to any such works.  Defendants must amend their responses to answer the Interrogatory as it was posed—not your unilateral gloss thereon.

In addition, defendants have agreed to eliminate the improper "without limitation" qualifier in their amended responses, with the shared understanding that they retain the ability to supplement their responses as they become aware of more information.  You also agreed to correct Nanci Solo's and Erik Colan's response to Interrogatory No. 4, wherein they erroneously stated that "Defendant was deposed in . . . and submitted a declaration in" two past cases concerning Marvel.

As to the "unknown" instructions, the source of our concern is the incompleteness of defendants' interrogatory responses.  For example, Larry Lieber's purported lack of knowledge of any creative contributors (apart from himself) to virtually all of the works in question is untenable.  His response that certain individuals "may have" provided testimony in other litigations, without a definitive statement one way or the other, is similarly not proper.  That said, rather than hold the parties to the full rigors of the "unknown" instructions, we suggest defendants provide (for each "unknown" or similar answer) an affirmation that they have performed a diligent and comprehensive search for the information requested and state whether the investigation for a more fulsome answer is ongoing.  We believe this will address the heart of our concerns without imposing any unnecessary burdens on the parties.  Please confirm this is an agreeable compromise for both Marvel's interrogatories and the ones served by defendants.

With respect to Interrogatory No. 5, we will not require that defendants produce copies of those interviews that take the form of online videos and podcasts, provided (1) they are readily accessible to Marvel; (2) defendants stipulate that the interviews may be used in the case as if defendants had produced them; (3) defendants will produce any of the interviews prior to any depositions in which they may use the interviews; and (4) defendants acknowledge this is not an agreement by Marvel to defendants' interpretation of possession, custody, or control, or a broader position on defendants' production obligations.



We also continue to reject defendants' efforts to disclaim authentication of interviews they identify. Something is either an interview with Larry Lieber, for example, or it is not. Defendants' effort to disentangle identification from authentication is equally illogical and improper.

Finally, we continue to object to defendants' improper verifications. As explained, individual parties (unlike corporations) may not verify interrogatories on information and belief. *See U.S. ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 650 (C.D. Cal. 2007). Moreover, while you said that you conducted some of the investigation to enable defendants to respond to interrogatories, defendants, of course, had an obligation to conduct a reasonably diligent investigation in responding to Marvel's interrogatories. Thus, that cannot excuse defendants' failure to provide properly verified interrogatories. Nevertheless, so that Marvel can consider whether a compromise solution may be found, we ask that defendants advise whether they would be willing to stipulate that their interrogatory responses may be used as though the "information and belief" qualifier were not included.[7]

*   *   *

Given the amount of time that these issues have been outstanding, we ask for a written response to our May 11 letter by close of business tomorrow and a written response as to the balance by the end of the week.

Sincerely,

Molly M. Lens
Of O'Melveny & Myers LLP

---

[7] We reject your suggestion that Marvel's interrogatories are somehow not proper. As addressed in more detail in our May 23 correspondence, Marvel—unlike defendants—has been adhering to the rules regarding interrogatories.