Exhibit 31

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

MARVEL CHARACTERS, INC.,

                Plaintiff,

    v.

NANCI SOLO and ERIK COLAN,

                Defendants.

Civil Action No.  1:21-cv-05316-DG-TAM

NANCI SOLO and ERIK COLAN

                Counterclaimants,

    v.

MARVEL CHARACTERS, INC. and DOES 1-10, inclusive,

                Counterclaim-Defendants.

**MARVEL CHARACTERS, INC.'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT NANCI SOLO'S SECOND SET OF INTERROGATORIES**

| | |
|---|---|
| PROPOUNDING PARTY: | NANCI SOLO |
| RESPONDING PARTY: | MARVEL CHARACTERS, INC. |
| SET NO.: | TWO |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Eastern District of New York (the "Local Rules"), Plaintiff Marvel Characters, Inc. ("MCI") hereby further responds and objects to Nanci Solo's Second Set of Interrogatories ("Interrogatories" and, individually, "Interrogatory"), served on June 26, 2022 via regular mail, as follows:

## PRELIMINARY STATEMENT

These responses are made solely for purposes of this action and are subject to all objections as to competence, relevance, materiality, privilege, and admissibility, and any and all objections and grounds that would require exclusion of any statement made herein if such statement were made by a witness present and testifying in court, all of which objections and grounds are reserved and may be interposed at the time of trial. These responses shall not be used in connection with any other proceeding.

No incidental or implied admissions are intended by these responses. The fact that MCI responds or objects to any of the Interrogatories should not be construed as an admission that it accepts or admits the existence of any facts assumed by such Interrogatory, or that such response or objection constitutes admissible evidence as to any such assumed facts. The fact that MCI responds to part or all of any of the Interrogatories is not intended to be and shall not be construed as a waiver of any part of any objection to any Interrogatory.

MCI is still in the process of investigating the facts of this case and searching for responsive information and Documents, which is a particularly burdensome and expensive undertaking given that many of the relevant events took place decades ago. Nor has MCI completed discovery or concluded preparation for summary judgment or, if necessary, trial. As a result, MCI's objections and responses herein are preliminary and based on information and Documents that are presently available and specifically known to MCI after having made a diligent search and reasonable and good faith inquiry, and are made without prejudice to MCI's right to: (1) amend, alter, supplement, clarify or otherwise modify these objections and responses as this matter proceeds; (2) make use of, or introduce at any hearing or trial, any Documents, information, facts, evidence, and legal theories which are subsequently discovered or which are

now known but whose relevance, significance, or applicability has not yet been ascertained; and (3) offer expert witness opinions on any relevant matter, which opinions may be at variance with these objections and responses or the information and Documents referenced in response to Solo's Interrogatories.

Furthermore, MCI's responses are made without in any way intending to waive, but on the contrary, intending to preserve:

1.     The right to raise—as part of any subsequent proceeding in, or the trial of, this or any other action—all questions of authenticity, foundation, relevancy, materiality, privilege, and admissibility as evidence for any purpose of any information or Documents produced or identified in support of any of the responses to any portion of Solo's Interrogatories;

2.     The right to object on any ground—as part of any subsequent proceeding in, or the trial of, this or any other action—to the use of any information or Documents produced or identified in support of any of the responses to any portion of Solo's Interrogatories;

3.     The right to object to introduction into evidence of any of these responses; and

4.     The right to object on any ground at any time to other discovery involving the subject thereof.

## **GENERAL OBJECTIONS**

MCI objects to each particular Interrogatory on the following grounds, which are hereby incorporated within each response set forth below:

1.     MCI objects to each and every Interrogatory, definition, and instruction that purports to impose obligations beyond those required or permitted by the Federal Rules of Civil Procedure or the Local Rules.  MCI interprets each and every Interrogatory, definition, and instruction to be consistent with the Federal Rules of Civil Procedure and Local Rules.

2.     MCI objects to each and every Interrogatory, definition, and instruction to the extent it contains argumentative, inaccurate, incomplete, or misleading descriptions of the facts, persons, relationships, events, and pleadings underlying this action.  Any response to any Interrogatory shall not constitute MCI's agreement with or acquiescence to any such description.

3.     MCI objects to each and every Interrogatory, definition, and instruction to the extent it seeks information that is neither relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence.  MCI will only disclose information consistent with its responses below.

4.     MCI objects to each and every Interrogatory, definition, and instruction to the extent it is vague, ambiguous, unclear, or fails to identify the requested information with reasonable particularity.  To the extent that an Interrogatory requires subjective judgment on the part of MCI as to what information is requested, MCI will disclose responsive, non-privileged information according to its understanding of the Interrogatory.

5.     MCI objects to each and every Interrogatory, definition, and instruction to the extent it is overbroad, onerous, and unduly burdensome and, thus, outside the scope of permissible discovery.  MCI will only disclose information  consistent with its responses below.

6.     MCI objects to each and every Interrogatory to the extent it seeks information that is a matter of public record, already in the possession of Solo, or otherwise equally available to the public and Solo.  MCI objects to Instructions Nos. 1 and 5 on this same basis.  That said, without committing to undertake a search specifically for information in the public record, MCI will not withhold any responsive information of which MCI is aware because it may also be available in the public record, but MCI will not undertake a search of the public record for Solo.

7.      MCI objects to each and every Interrogatory to the extent that it seeks disclosure of information that is unreasonably cumulative or duplicative of other discovery served in this action, or is obtainable from sources that are more convenient, less burdensome, or less expensive.

8.      MCI objects to each and every Interrogatory to the extent that it seeks to require MCI to use more than reasonable diligence to locate and identify responsive information. Consistent with its obligations, MCI will conduct a reasonably diligent inquiry for responsive information and Documents.

9.      MCI objects to each and every Interrogatory, definition, and instruction to the extent it seeks information that is not within MCI's possession, custody, or control.

10.     MCI objects to each and every Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney-work product doctrine, the common interest or joint defense privileges, rules and agreements governing privacy or confidentiality, or any other applicable privilege or protection recognized under statute or applicable case law. Inadvertent disclosure by MCI of any information protected by any applicable privilege or protection shall not constitute a waiver, in whole or in part, of the privilege or protection.

11.     MCI objects to each and every Interrogatory to the extent it seeks MCI's sensitive, confidential, or proprietary business information.  To the extent such information is responsive, relevant, and not privileged, MCI will disclose such confidential information pursuant to the Protective Order, and any subsequent revisions to that Protective Order upon which the Parties may agree.

12.     MCI objects to each Interrogatory, definition, and instruction to the extent that it prematurely requests discovery of expert materials and information in advance of their respective

deadlines under the Scheduling Order governing this case and/or the Federal Rules of Civil Procedure.  MCI will not disclose any expert materials or information before such deadlines.

13.    MCI objects to each and every Interrogatory to the extent it seeks information the disclosure of which would be prohibited by applicable law, rule, regulation, or contractual obligation.  In particular, MCI objects to each and every Interrogatory to the extent it seeks information subject to confidentiality obligations (such as settlement agreements with third-parties) or protective orders, such as the Documents produced by parties other than MCI or another Marvel entity in prior litigations.  MCI cannot, and will not, identify any such information unless and until it is relieved of its confidentiality obligations with respect to such information, and nothing contained in any response to any Interrogatory should be considered an agreement to identify such information.

14.    Nothing contained in any response herein shall be deemed an admission, concession, or waiver by MCI as to the validity of any claim or defense asserted by Solo.

15.    All objections as to the relevance, authenticity, or admissibility of these responses and any information referenced therein are expressly reserved by MCI.

16.    To the extent that MCI responds to any of the Interrogatories, it reserves the right to object on any grounds, at any time, to other discovery requests involving or relating to the subject matter of the Interrogatories that MCI has responded to herein.

17.    MCI reserves all objections to the use of these responses.  All such objections may be interposed by MCI at the time of trial or as otherwise required by the rules or order of the Court.

18.    MCI's responses herein shall not in any way constitute an adoption of Solo's purported "Definitions" of words or phrases or "Instructions" contained in the Interrogatories.

MCI objects to the Definitions, Instructions, and Interrogatories to the extent they: (i) are vague, ambiguous, compound, overbroad, unduly burdensome, and not reasonably tailored to avoid imposing undue burden and expense on MCI; (ii) seek information for an undefined period of time or, if defined, cover and span an unreasonably long or burdensome time period, and therefore are burdensome and oppressive; (iii) are inconsistent with the ordinary and customary meaning of the words or phrases they purport to define; (iv) seek to impose obligations different from, or in excess of, those created by the Federal Rules of Civil Procedure or Local Rule; (v) include assertions of purported fact that are inaccurate or disputed by the parties to this action; and/or (vi) incorporate other purported defined terms that suffer from such defects.  In responding to the Interrogatories, MCI has, where possible, employed what it regards as the reasonable, common-sense interpretation of the Interrogatory in light of the relevant issues in the case.

19.    MCI objects to each Interrogatory to the extent that it assumes the existence, relevance, materiality, truth, admissibility, or authenticity of any particular information, or assumes the validity of any claim or defense.  In responding to these Interrogatories, MCI does not make any admissions or waive any rights or objections, all of which are expressly preserved.

20.    MCI objects to each Interrogatory to the extent that it requires MCI to draw a legal conclusion.

21.    MCI reserves the right to revise, amend, or supplement its objections, responses, and/or production, and to use in discovery and at trial any information that is omitted as a result of mistake, inadvertence, or oversight.  MCI notes that discovery is ongoing and that MCI suggested that Solo would be better served by deferring MCI's time to respond to these

interrogatories but that Solo refused.  MCI's responses are thus based on the information that is presently available and specifically known to it.

22.     MCI objects to the definition of "COLAN WORKS" insofar as it assumes that COLAN "created" or "co-created" certain comic book stories, which implies unfound legal conclusions, is argumentative, and is inconsistent with the facts.

23.     MCI objects to the definition of "MARVEL" as overbroad and unduly burdensome to the extent it includes "any related or predecessor entities, INCLUDING Atlas Magazines, Inc. Cadence Industries Corporation, Canam Publishers Sales Corp., Magazine Management Co., Inc., Marvel Comics Group, Marvel Entertainment Group, Inc., Marvel Comics, Inc., Non-Pareil Publishing Corp., Perfect Film & Chemical Corporation, and Vista Publications, Inc., and, where applicable, their present and former officers, directors, employees, agents, partners, subsidiaries, members, and affiliated."

24.     MCI objects to the definition of "YOU" and "YOUR" as overbroad and unduly burdensome to the extent this definition includes MCI's "partners, corporate parent, subsidiaries or affiliates."

25.     MCI objects to Instruction No. 6 to the extent that it purports to require MCI to log information, as though the Interrogatories are requests for production.  MCI does not agree to provide privileged information or a privilege log with respect to these Interrogatories.

26.     MCI objects to the use of the terms "freelancer," "creat[ion]," and "co-creat[ion]" in the Interrogatories, which assume unfound legal conclusions, are argumentative, and/or assume facts.  MCI interprets such terms to seek information pertaining to the nature of the working relationship between Solo and MCI.

27.     The fact that MCI may reassert particular objections in responding to individual Interrogatories should not be construed as limiting the generality of the foregoing objections. The General Objections set forth herein are asserted with respect to each and every Interrogatory.

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

To the extent MARVEL no longer possesses DOCUMENTS from 1961-1976 responsive to Nanci Solo and Erik Colan's Requests for Production ("Colan RFPs") or Defendant Colan's First Set of Interrogatories to Marvel and Defendant Solo's First Set of Interrogatories to Marvel (see e.g., Marvel Characters, Inc.'s Responses and Objections to Defendant Erik Colan's First Set of Interrogatories, No. 1 (referring to the 1960s and 1970s: "Marvel no longer possesses payment records from this time period")), please IDENTIFY which such DOCUMENTS YOU consider lost or destroyed, how and why such DOCUMENTS were lost or destroyed, and when.

### RESPONSE TO INTERROGATORY NO. 1:

MCI incorporates its General Statement and Objections.  MCI further objects to the definition of "MARVEL" as overbroad and unduly burdensome to the extent it includes "any related or predecessor entities, INCLUDING Atlas Magazines, Inc. Cadence Industries Corporation, Canam Publishers Sales Corp., Magazine Management Co., Inc., Marvel Comics Group, Marvel Entertainment Group, Inc., Marvel Comics, Inc., Non-Pareil Publishing Corp., Perfect Film & Chemical Corporation, and Vista Publications, Inc., and, where applicable, their present and former officers, directors, employees, agents, partners, subsidiaries, members, and affiliated."  MCI further objects to this Interrogatory as seeking to circumvent the numerosity limit in Rule 33 of the Federal Rules of Civil Procedure by serving this Interrogatory (a) as to both Nanci Solo and Erik Colan, even though Solo and Colan have served separate

interrogatories previously; and (b) only in this case despite facially seeking discovery of information pertinent to all five closely related pending cases (including three that have been consolidated for all-pretrial purposes).  MCI further objects to this Interrogatory to the extent that any of the defendants, who are all represented by the same counsel-of-record, attempt to use it in any of the other pending cases, especially given that the Colan Heirs refused to agree to consolidation.  All told, not even counting subparts, defendants have served 100 interrogatories on MCI to date.  MCI further objects to this Interrogatory on the grounds that it impermissibly contains multiple subparts.  MCI further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, and any other privilege or immunity available under law or arising from contractual obligation and, by answering this Interrogatory, MCI does not waive, but rather expressly preserves, all such privileges.

Subject to and without waiving the foregoing general and specific objections, and its right to supplement this response, MCI responds as follows:  Solo requests documents from roughly sixty years ago concerning a business that has restructured and reorganized several times during the ensuing sixty years.  Further, over this same time period, MCI and its predecessors-in-interest changed physical offices and agents (including outside counsel) several times.  Understandably, MCI and its predecessors-in-interest have not maintained in the ordinary course of business all records that they ever possessed in the past sixty or more years.  Despite all this, MCI, through its diligent efforts, has identified and produced records relating to Colan's work for Marvel from 1961 to 1976.[1]  That alone is remarkable given that MCI could not have reasonably anticipated

---

[1] *See, e.g.*, Colan's 1975 Writers and Artists Agreement with Marvel (2021MARVEL-0054544); Amendments to Colan's 1975 Writers and Artists Agreement (2021MARVEL-054552); Colan's *Kirby* Declaration (2021MARVEL-0032722); Colan's *Wolfman* Deposition Transcript (2021MARVEL-0032787); "A Tribute to Gene Colan" Book (2021MARVEL-0006984); "The Invincible Gene Colan" Book (2021MARVEL-0007084); "Marvel Masterworks

that Colan (or his heirs) would serve termination notices, especially given that Gene Colan himself repeatedly admitted that he understood his work for MCI was done on a work-made-for-hire basis.[2]  That MCI does not possess certain records from 1961 to 1976 should come as no surprise given that the Colan Heirs' counsel of record was advised—more than a decade ago—that MCI did not possess, for example, checks paid to freelancers from 1950 to 1964.[3]  That said, MCI is not aware of any specific circumstances explaining why any categories of documents or particular documents relating to Colan's work for Marvel during the 1960s and 1970s have not been located by MCI's reasonably diligent searches.

**INTERROGATORY NO. 2:**

Describe in detail YOUR efforts to identify, obtain, and/or collect DOCUMENTS responsive to the Colan RFPs.

**RESPONSE TO INTERROGATORY NO. 2:**

MCI incorporates its General Statement and Objections.  MCI further objects to the definition of "YOU" and "YOUR" as overbroad and unduly burdensome to the extent this

---

Captain America Vol. 4" Introduction (2021MARVEL-0007249); "Marvel Masterworks Daredevil Vol. 3" Introduction (2021MARVEL-0007251); "Marvel Masterworks Daredevil Vol. 5 Introduction (2021MARVEL-0007252); Assorted Gene Colan Artwork (2021MARVEL-0009198; 2021MARVEL-0009203; 2021MARVEL-0034061- 2021MARVEL-0034065).

[2]  *See, e.g.*, May 31, 2008 Agmt. between Marvel Characters, Inc., Marvel Entertainment, Inc., and Gene Colan (2021MARVEL-0032776) at preamble, ¶¶ 1 & 3  (Colan "confirm[s] that the Materials were created as works made for hire under section 26 of the Copyright Act of 1909, as amended, . . . acknowledges that Marvel is the sole and exclusive owner of all rights, title and interest in and to the Materials, and all characters embodied in the Materials, . . . [and] acknowledges that he has no right, benefit, title or interest in or to the Materials or any character."); Dec. 12, 2007 "Work Made for Hire Agreement" between Marvel Characters, Inc. and Gene Colan (2021MARVEL-0032740) ("[Colan] agrees and acknowledges that his/her services hereunder and the results and proceeds thereof, including without limitation any writings, artwork, drawings, stories, scripts, character designs, plots, pencils, templates, photographic, graphic or computer-generated material or the like already produced . . . by [Colan] for MARVEL at the request of MARVEL . . . shall be owned exclusively and in perpetuity by MARVEL."); May 30, 1978 work-made-for-hire agreement with Gene Colan (2021MARVEL-0032752) (" . . . [Colan] acknowledges, agrees and confirms that any and all work, writing, art work material . . . is expressly agreed to be considered a work made for hire.").

[3]  *See* Response to Request for Admission No. 4, (Response to Defendants' First Set of Requests for Admission, dated December 20, 2010, *Marvel Worldwide, Inc. v. Kirby*, Case No. 1:10-cv-00141-CM-KNF (S.D.N.Y.)) [Ex. 1].

definition includes MCI's "partners, corporate parent, subsidiaries or affiliates. MCI further objects to this Interrogatory as seeking to circumvent the numerosity limit in Rule 33 of the Federal Rules of Civil Procedure by serving this Interrogatory (a) as to both Nanci Solo and Erik Colan, even though Solo and Colan have served separate interrogatories previously; and (b) only in this case despite facially seeking discovery of information pertinent to all five closely related pending cases (including three that have been consolidated for all-pretrial purposes). MCI further objects to this Interrogatory to the extent that any of the defendants, who are all represented by the same counsel-of-record, attempt to use it in any of the other pending cases, especially given that the Colan Heirs refused to agree to consolidation. All told, not even counting subparts, defendants have served 100 interrogatories on MCI to date. MCI further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, and any other privilege or immunity available under law or arising from contractual obligation and, by answering this Interrogatory, MCI does not waive, but rather expressly preserves, all such privileges.

Subject to and without waiving the foregoing general and specific objections, its right to supplement this response, and without waiver of any applicable privileges, including the attorney-client privilege and work-product protection, MCI responds as follows:[4] Consistent with the letter and spirit of Rule 26(a) of the Federal Rules of Civil Procedure, MCI began identifying, obtaining, and collecting non-privileged documents relevant to the Colan Heirs' purported termination notices even before receiving the Colan First Set of Requests for Production on February 8, 2022 (or any other Defendant's requests for production) (collectively,

---

[4] Especially in light of the detail provided herein, MCI reserves the right to object to a Rule 30(b)(6) deposition on this subject. *See Sidman v. Concord Arena Parking, LLC*, 2021 WL 1940255, at *2 (E.D.N.Y. May 11, 2021) (A party may "ask for a declaration (**or** deposition) that outlines the practices and procedures used to collect and produce documents.") (emphasis added).

"the RFPs").[5]  Prior to and since receiving the RFPs, MCI has continued to diligently search for responsive, non-duplicative, non-privileged documents consistent with its responses and objections and the parties' meet-and-confer discussions and agreements.  MCI's search and collection efforts have been an iterative process and, as MCI has undertaken these efforts over many months, MCI—together with, and under the supervision of, its outside counsel—has vetted and re-vetted its process to ensure that its processes were, and are, comprehensive.[6]

MCI worked diligently to identify both custodial and non-custodial sources—both in electronic and hard copy forms—reasonably likely to contain responsive information.[7]  As part of this process, MCI reached out to employees in Marvel's legal, finance, tax, human resources, and publishing departments to inquire not only about their files but their knowledge of other potential sources of information.  Without conceding that it had any obligation to do so, these efforts extended beyond MCI itself to other Marvel entities and within the larger Disney organization, as appropriate.

As a result of these efforts, MCI identified a number of sources of potentially responsive information.  In each instance, MCI conducted reasonably diligent searches of each so-identified source.  Put differently, MCI did not decline to review any identified sources that were likely to have responsive information on the basis that such sources were either (a) too burdensome to

---

[5] While the Colan Heirs, *i.e.* Solo and co-defendant Erik Colan, served their requests for production *jointly*, these Interrogatories were purportedly served only on behalf of Solo.  None of the other defendants in the other pending cases served an interrogatory on MCI's collection efforts.  Despite Defendants' clear attempt to circumvent Rule 33's numerosity limit, MCI answers this interrogatory to cover its collection efforts across all the related cases but does so while reserving all rights to object to the number of additional interrogatories, if any, that Defendants may serve.

[6] As used throughout, "MCI" should be interpreted to include its outside counsel.

[7] *See, e.g., Cartier, a Div. of Richemont N. Am., Inc. v. Aaron Faber Inc.*, 2006 WL 20494, at *1 (S.D.N.Y. Jan. 4, 2006) (A party's "search may, of course, be limited to those sources reasonably likely to contain responsive information").

review; or (b) inaccessible, and MCI is unaware of any unsearched repositories that are likely to contain additional non-privileged responsive documents.

So as not to waive privileges and work-product production, and to present the extent of MCI's searches in an understandable manner, MCI has outlined its search and collection efforts around different categories of documents that Solo and the other Defendants have requested.[8] To be clear, however, there is unavoidable overlap among the categories and MCI's searches themselves were not so limited, with MCI looking broadly for responsive documents, regardless of the specific target of the specific search and/or source being reviewed. And, in light of the attorney-client privilege and work-product doctrine, Defendants should not assume that MCI's efforts were limited to what is stated herein.

**Contracts, Negotiations, and Related Correspondence**. Marvel's legal department uses a central repository called "SharePoint." SharePoint houses a wide variety of documents, which are organized into more than a dozen different folders (or libraries). In particular, SharePoint is the repository for contracts with talent as well as associated documents relating thereto, such as correspondence and negotiating history. SharePoint contains both native electronic documents as well as documents that previously existed in hard copy but have been scanned and loaded into the system in searchable form (such as historical correspondence).

MCI searched broadly in SharePoint for responsive documents. Specifically, MCI searched across the entire legal database[9] using the Defendant Contributors' last names (*i.e.* "Colan," "Ditko," "Lieber," "Heck," and "Rico"), as opposed to a more limited search for the

---

[8] Throughout this response, MCI uses the past tense to describe both its completed search efforts as well as those efforts that are ongoing and will be completed prior to August 22, 2022.

[9] Because of restricted access, there is one subfolder in the SharePoint database for which these electronic terms were not applied. However, MCI separately confirmed that there was no additional responsive information in this subfolder.

Defendant Contributors' full names. In addition, because it identified one document that had been incorrectly coded as "Colon," MCI also used "Colon" as a search term, though that did not produce any additional documents. Even further still, MCI has also searched for various noms de plume associated with the Defendant Contributors. In addition, consistent with the parties' agreement reached during their meet-and-confer discussions (which reflects Stan Lee's long-term employment with Marvel over many decades and the associated burden with Stan Lee-related requests), MCI agreed to produce any employment Agreements with Lee (or any other Agreements with Lee relating to the future provision of services), hiring records for Lee, and letters and/or communications referring to Lee as an employee, freelancer, or independent contractor that were identified through a reasonably diligent search.[10] Consistent with this agreement, MCI collected responsive documents not only from SharePoint but also from Marvel's finance and human resources departments. Even further still, and again consistent with the parties' agreement reached during their meet-and-confer discussions, MCI ran the last name of an additional forty or so contributors,[11] with the search limited to documents in the 1960s and 1970s, again, as agreed. And, despite going beyond the parties' agreement, MCI further used associated noms de plume for these contributors as additional search terms. MCI then reviewed all the documents that resulted from these various efforts.

---

[10] *Compare* April 19, 2022 M. Lens Letter at 3 *with* April 28, 2022 J. Parkkinen Letter at 1 ("Marvel's April 19 letter satisfactorily addressed the points raised in Defendants' meet-and-confer letters regarding Defendants' RFPs.").

[11] These contributors include Dick Ayers, Sam Rosen, Art Simek, Joe Sinnott, John Romita, Gary Friedrich, Bill Everett, Joe Maneely, Joe Simon, Jim Steranko, Neal Adams, Gaspar Saladino, Vince Colletta, Len Wein, Jack Abel, Glynis Oliver, Gerry Conway, Ross Andru, Frank Giacoia, John Costanza, Marv Wolfman, Mike Ploog, Archie Goodwin, Steve Englehart, Jim Starlin, Al Milgrom, Larry Hama, Doug Moench, Tony Isabella, Bill Mantlo, Ed Hannigan, Gray Morrow, Steve Gan, Dan Adkins, Roy Thomas, Alan Weiss, Tom Orzechowski, Mike Friedrich, and Mike Esposito.

In addition, MCI identified an index of Marvel's boxes stored in an offsite facility. While most boxes on this index were identified as pertaining to irrelevant time periods and/or were otherwise irrelevant, MCI identified certain files of agreements with talent. MCI pulled these files from offsite storage and reviewed all agreements contained therein.

Even further still, MCI identified hard-copy agreements stored in filing cabinets at Marvel's offices in New York, and reviewed them to determine whether they contained any additional responsive documents that were not identified through its SharePoint searches.

For further confirmation about the comprehensiveness of MCI's search, MCI indexed the various "work-for-hire" one-page agreements that were produced in the *Kirby* litigation and cross-referenced those against SharePoint to ensure that all responsive one-pagers had been produced.

**Financial, Payment, and Tax Records**. Marvel maintains financial records, including historical records, in an electronic repository. As with MCI's SharePoint searches described above, MCI's searches in this electronic database were designed to capture all documents relating to payments to the Defendant Contributors, including financial records, and Defendants agreed to the search terms that would be used to capture responsive information.[12] In addition, MCI also identified an electronic system used by accounts payable and worked with its employees to ensure that responsive documents relating to the Defendant Contributors and Stan

---

[12] *See* April 19, 2022 M. Lens Letter at 2-3 ("MCI will agree to produce all agreements, save vouchers, with [the Defendant Contributors]. As to vouchers, MCI confirms that it does not have any vouchers prior to 1987, which should moot Defendants' concerns. MCI, however, will nevertheless also agree to produce any vouchers that it identifies through electronic searches associated with the Defendant Contributors' names, but will not agree to undertake the burden to search for other vouchers . . . MCI will [also] agree to produce responsive payment documents to the Defendant Contributors to the extent that it can identify such records through electronic searches identified with the Defendant Contributors' names."). Defendants specifically confirmed their agreement. *See* April 28, 2022 J. Parkkinen Letter at 1 ("**Marvel's April 19 letter satisfactorily addressed the points raised in Defendants' meet-and-confer letters regarding Defendants' RFPs.**") (emphasis added); *see also* April 12, 2022 J. Parkkinen Letter at 4 ("The parties agreed to exclude production of hardcopy payment documents from the 1980s and 1990s currently held in offsite storage, with the exception of the 'vouchers' as described above.").

Lee (with, again, the parties expressly agreeing which payment information for Lee would be produced) were identified.  Marvel also confirmed with various individuals in its finance, tax, human resources, and publishing departments that they were not aware of additional (either physical or electronic) repositories of additional information.  Further still, MCI reviewed the index of files stored by finance offsite and determined that all finance and payment-related documents related to the 1980s or later.  MCI met and conferred with Defendants about the scope of its financial and/or payment records, including copies of checks.  In particular, MCI explained that Marvel's hard-copy records did not pertain to the time period in question.  Accordingly, the parties agreed that MCI need not search these offsite hard-copy boxes.[13]  And, in an abundance of caution, even though it understood that the records were outside the relevant time period, MCI confirmed that cancelled checks maintained by its legal department were non-responsive.

 **Correspondence**.  As noted above, Marvel's SharePoint system is the repository for material correspondence, including historical correspondence, with SharePoint being searched for any correspondence associated with the Defendant Contributors.  While these searches should have identified any correspondence between the Defendant Contributors and Stan Lee, MCI also reached out to Marvel publishing employees and determined that no additional historical repository of Stan Lee-related correspondence exists.[14]  In addition, MCI worked to determine who, if anyone, may have used email to communicate with the Defendant Contributors or Stan Lee.  MCI then searched the identified custodians' emails for any communications to or from the identified email addresses associated with the Defendant

---

[13]  *See id.*

[14]  Stan Lee ceased being Marvel's editor in chief in the 1970s.

Contributors and Stan Lee. MCI also confirmed that these custodians did not have any physical correspondence files.

**Human Resources and Employment Records**. As noted above, there is significant overlap between the categories such that searches for agreements, correspondence, and payment/financial information covered many employment-related materials relating to the Defendant Contributors. Nevertheless, in addition to the searches described above, MCI acquired files from its HR department, including physical files. As part of this process, MCI identified hard-copy agreements, payment-related files, and benefit-related documents, which have been reviewed for responsiveness, consistent with the parties' agreements.

**Interviews and Introductions**. Consistent with the parties' agreement, MCI worked with Marvel's publishing department to identify the list of retrospective introductions penned for Marvel by the Defendant Contributors. In addition, even though these introductions fell outside its agreement with the Defendants,[15] MCI also worked to identify any introductions authored by Stan Lee, Roy Thomas, and Gerry Conway. In addition, and despite Defendants' agreement that MCI did not have an obligation to do so,[16] MCI also searched publicly available sources—both

---

[15] *See* MCI's Supp. R&Os, Responses to RFP Nos. 17 and 50 (" . . . MCI has identified a number of introductions to books published by Marvel that either were written by Steve Ditko, Gene Colan, Don Heck, Don Rico, or Larry Lieber and/or contain interviews from such individuals and MCI will produce these introductions."); *see also* April 19, 2022 M. Lens Letter at 5 ("As a compromise . . . MCI has identified a number of introductions to books published by Marvel that either were written by Steve Ditko, Gene Colan, Don Heck, Don Rico, or Larry Lieber and/or contain interviews from such individuals and MCI will agree to produce these introductions. Defendants specifically confirmed their agreement. *See* April 28, 2022 J. Parkkinen Letter at 1 ("**Marvel's April 19 letter satisfactorily addressed the points raised in Defendants' meet-and-confer letters regarding Defendants' RFPs**.") (emphasis added).

[16] *See* MCI's Supp. R&Os at ¶ 31("MCI objects to Instruction No. 13 as overbroad and unduly burdensome to the extent it purports to require MCI to obtain possession of DOCUMENTS from public sources equally available to Nanci Solo and Erik Colan. MCI construes Instruction No. 13 to only oblige MCI to request possession of DOCUMENTS from non-public sources."); *see also* April 12, 2022 J. Parkkinen Letter at 5 ("The parties have both agreed to produce responsive documents regardless of whether such documents are also in the public record . . . ."); April 19, 2022 M. Lens Letter at 4 ("MCI confirms that it does not intend to withhold any responsive documents that it otherwise agrees to produce because the documents may also be available in the public record. That said, MCI does not agree to undertake a search for Defendants of documents in the public record, especially where it would be unduly burdensome for it to so."). Defendants specifically confirmed their agreement. *See* April 28, 2022 J.

physical and electronic—to identify various written and audiovisual materials containing information relating to the Defendant Contributors, Stan Lee, or the Works.  As part of these efforts, MCI visited and/or contacted a number of libraries located around the country to obtain documents from their physical collections.

**Comics and Source Material (including scripts, plots and artwork)**.  MCI compiled a set of all the comics subject to the Defendants' purported termination notices.[17]  In addition, despite being under no obligation to do so, Marvel has returned much of the original "artwork," that is, original comic pages, to various contributors over the years.  Marvel, however, continues to retain a limited amount of artwork that it published over the years.[18]  MCI searched these physical files of artwork to identify any documents relating to the Works at issue and/or the Defendant Contributors.  MCI identified five pages relating to Colan, which, while unrelated to the comics at issue in this litigation, have been provided to the Colan Heirs.  Further, MCI reached out to Marvel publishing employees to determine whether they were aware of any additional source materials by Stan Lee, such as artwork with margin notes by Stan Lee and/or plots and synopses.  Even further, MCI produced the entirety of Marvel's productions from *Kirby*, with such productions reflecting Marvel's search for source materials for the overlapping comics and characters at issue in that litigation.  MCI also worked with third parties within its

---

Parkkinen Letter at 1 ("**Marvel's April 19 letter satisfactorily addressed the points raised in Defendants' meet-and-confer letters regarding Defendants' RFPs**.") (emphasis added).

[17] MCI has also produced all the purported termination notices themselves—even though Defendants did not.

[18] Generally speaking, this is because the contributors are deceased and Marvel does not have a means to return the artwork to any surviving family members.

control to obtain additional source materials.  In addition, MCI identified additional source materials through publicly available sources.[19]

**Copyright Registrations and Renewals**.  MCI requested and obtained the copyright registrations and renewal certificates from the intellectual property database of an affiliated entity.  This database includes scanned copies of registrations and renewals that Marvel previously kept in hard copy.  To the extent that MCI was not able to identify a copyright registration and/or renewal within its own database, MCI reached out to the copyright office to obtain a copy thereof.  MCI also conducted a reasonably diligent inquiry to determine whether there was any additional repository (either physical or electronic) of copyright registration-related materials—such as correspondence relating thereto—but was unable to identify any such source.

**Prior Litigation Records**.  Through its current and prior counsel, MCI obtained and produced thousands of documents produced in prior litigations, including agreements, financials, source materials, interviews, and other documents from, or pertaining to, the relevant time in these cases (and shortly before or after).  To do so, MCI—at its own expense—sought and obtained a modification of the protective order in *Kirby*, which allowed MCI to not only review and produce its own productions in full but any other produced documents it could identify.[20] To comprehensively collect these documents—as well as additional responsive deposition transcripts and documents from Marvel productions in other prior litigations—MCI not only searched its own records but also worked with prior outside counsel—Paul Hastings LLP, Weil

---

[19] Stan Lee donated many of his papers to the University of Wyoming.  In addition, Stan Lee may have retained additional files at his home and/or with his attorneys, with such documents being outside MCI's possession, custody, and control.

[20] Per the parties' agreement, Defendants' counsel was to review its own files and work with the Kirbys—whom Defendants' counsel represents and whom MCI subpoenaed—to identify any additional documents from the *Kirby* litigation that MCI could not locate.  Defendants, however, have not produced any additional documents.

Gotshal & Manges LLP, and Haynes & Boone LLP—to obtain theirs.[21]  As a result, MCI was able to identify and produce hundreds of additional documents (including sworn testimony) from *Stan Lee Media, Inc. v. Walt Disney Co.*, No. 12-cv-2663 (D. Colo.), *Gary Friedrich Enters. v. Marvel Enters.*¸ No. 08-cv-1533 (S.D.N.Y.), *Lee v. Marvel Enters.*, No. 02-cv-8945 (S.D.N.Y.), *Marvel Characters, Inc. v. Simon,* No 00-cv-1393 (S.D.N.Y.), and *In re Marvel Entertainment Group* (*Wolfman*), Nos. 96-2067 through 96-2077 (Bankr. D. Del.); Nos. 97-145, 97-146 (D. Del.).[22]  In addition, and even further still, MCI searched court and administrative records—electronic and physical—to identify additional responsive information.[23]

**Historical Corporate Documents**.  As noted above, Marvel's SharePoint system is the repository for contracts and agreements, such as the agreements evidencing the chain of title of copyrights from the Copyright Claimants to MCI today.  In addition, MCI also identified physical and electronic documents associated with historical corporate restructurings, such as the closing documents from New World Entertainment's 1988 sale of Marvel Entertainment Group, Inc. to Andrews Group International and those relating to the 1998 consummation of Marvel Entertainment Group, Inc.'s chapter 11 plan of reorganization.  Even more, MCI worked with attorneys who previously worked for Kenyon & Kenyon LLP—Marvel's outside counsel dating

---

[21] Defendants' August 5 letter identified three firms— Battle Fowler LLP, Engel & Engel LLP, Fish & Richardson LLP—that it suggested MCI contact for potentially responsive documents.  Without agreeing that any of these firms are likely to have responsive information, Marvel responds as follows:  (1) the lead attorneys at Battle Fowler LLP during the *Wolfman* litigation later moved to Paul Hastings LLP, from which MCI obtained documents (including relating to the *Wolfman* litigation); (2) Marvel's lead counsel at Engel & Engel LLP is deceased and the firm no longer exists; and (3) the former lead attorney at Fish & Richardson LLP no longer works with his prior firm, as MCI confirmed through its outreach to Fish.

[22]  In contrast, Solo represented that she would be moving to modify the protective orders in *Friedrich* and *Simon* back in March—which her counsel claimed were "undeniably relevant"—but she never did so.  *See* March 14 M. Toberoff Email.

[23] MCI also took such steps to collect documents responsive to its *own* requests for production, retrieving publicly available surrogate court documents for certain deceased Defendant Contributors when Defendants failed to produce them.

back to the 1960s—to identify potentially relevant information contained in Kenyon's historical archives.  Over the course of many months, MCI retrieved and reviewed approximately thirty boxes of physical files and, as a result, identified files not only relating to Marvel's historical organizational structure, ownership of the Copyright Claimants, and corporate restructurings but also other responsive documents, such as contracts, litigation files, payment records, and correspondence, dating back to the 1960s (and earlier).  Even further still, MCI searched governmental records for responsive documents, such as certificates of incorporation, certificates of doing business under an assumed name, and merger documents associated with the Copyright Claimants.

*      *      *

To review and produce the documents identified through the above efforts, MCI (through counsel of record) engaged a team of ten contract reviewers—who were supervised by two O'Melveny staff attorneys.  Collectively, this team spent more than 2100 hours, that is, nearly 88 days, identifying responsive documents.  And this does not include all the time and effort spent on MCI's efforts by Marvel employees and other O'Melveny attorneys, who have been extensively involved, much less third parties.

As a result of these costly and time-intensive efforts, MCI has produced responsive information not only from its own electronic and hard-copy files but also from affiliated entities, from third-parties within its control, and from publicly available sources.  MCI's significant efforts to identify responsive information have resulted in the production of nearly 7,000 documents,[24] consisting of 70,000 pages, and, subject to its right and obligation to supplement its productions, will complete its production on or before August 22, 2022.  Consistent with the

---

[24] In contrast, the Colan Heirs—collectively—have produced just five documents.

parties' agreement, any responsive documents withheld on a claim of privilege will included privilege log within 30 days thereafter, to the extent not already logged.

Dated:  August 15, 2022

**O'MELVENY & MYERS LLP**


By:  */s/ Daniel M. Petrocelli*
                    Daniel M. Petrocelli

Daniel M. Petrocelli*
dpetrocelli@omm.com
Molly M. Lens
mlens@omm.com
Danielle Feuer*
dfeuer@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
Telephone:  (310) 553-6700
Facsimile:  (310) 246-6779

Allen Burton
aburton@omm.com
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

Kendall Turner*
kendallturner@omm.com
1625 I Street NW
Washington, DC 20006
Telephone:  (202) 383-5300
Facsimile:  (202) 383-5414

* Admitted pro hac vice

*Attorneys for Marvel Characters, Inc.*

**VERIFICATION**

I, Robert Steffens, am President of Marvel Characters, Inc. I am authorized to make this Verification on behalf of Marvel Characters, Inc. I hereby verify that on information and belief, the facts set forth in the answers to the Interrogatories are true to the best of my present knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 15th day of August, 2022.                    _____
                                                                              Robert Steffens