# EXHIBIT 39

Case 2:21-cv-07624-DMG-KES   Document 39-4   Filed 08/23/22   Page 1 of 6   Page ID #:728



O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036-6537

T: +1 212 326 2000
F: +1 212 326 2061
omm.com

File Number: 0903423-00392

August 3, 2022

**Allen W. Burton**
D: +1 212 326 2282
aburton@omm.com

Marc Toberoff
Jaymie Parkkinen
Toberoff & Associates
23823 Malibu Road, Suite 50-363
Malibu, California 90265

Re:   *Marvel Characters, Inc. v. Lieber*, No. 1:21-cv-07955-LAK; *Marvel Characters, Inc. v. Ditko*, No. 1:21-cv-07957-LAK; *Marvel Characters, Inc. v. Dettwiler*, No. 1:21-cv-07959-LAK; *Marvel Characters, Inc. v. Solo*, No. 1:21-cv-5316-DG-TAM; and *Marvel Characters, Inc. v. Rico*, No. 2:21-cv-07624-DMG-KES

Dear Marc and Jaymie:

We write to follow up on our July 27, 2022 meet-and-confer discussion and in response to your July 28 and 29, 2022 letters.

## **Defendants' Verifications**

Your repeated claims that Marvel somehow asked you to narrow your interrogatory responses are inaccurate. Marvel has consistently requested simply what it is entitled to under the Federal Rules, *i.e.,* full and accurate responses that are verified under oath. You acknowledged both on our call and in your letter that Defendants' verifications encompass the knowledge of the individual Defendants and others within their control, including their counsel. In view of these requirements, you stated Defendants would amend certain responses—(i) Lieber, Colan, and Solo Interrogatory No. 4 ("Identify all prior testimony, written or oral, by You and/or any of Your family members, agents, and/or representatives Concerning the Works and/or Your work for Marvel"), and (ii) Colan, Solo and Dettwiler No. 6 ("Identify all prior testimony, written or oral, or expert reports by Neal Adams or James Steranko Concerning Marvel and/or the Works")—and/or stipulate that Defendants' interrogatory responses could be used as though the "information and belief" qualifier were not included.

While we appreciate Defendants' agreement as to these interrogatories, MCI requires a resolution that applies to *all* of Defendants' interrogatory responses—past and future. As detailed in our July 15 letter, it is improper for Defendants to hedge their responses based on mere "information and belief," when the Federal Rules do not contemplate such a caveat. And it is similarly insufficient for Defendants to provide responses that are not fully accurate because they do not reflect the knowledge of those within Defendants' control, such as your firm's. You expressed a concern that Defendants are being asked to swear to the truth of information from decades ago. But for many requests, Defendants clearly have sufficient information on which to



respond and verify the accuracy of those responses, even where they were not personally involved. For example, when Defendants originally responded to Interrogatory No. 2, Defendants relied on information to identify Defendant Decedents as contributing to various works. Moreover, if Defendants lack the requisite comfort with the information contained in their interrogatory responses to verify such information under oath, then such information is not permitted to be included under the Federal Rules. All Marvel asks is for Defendants to verify that such information is accurate in accordance with the Federal Rules, notwithstanding that it is based on reliable information obtained by Defendants and not their own contemporaneous involvement.

Defendants thus should agree to amend all their current interrogatory responses to include all knowledge (after a reasonably diligent inquiry) of the individual Defendants and others within their control, including counsel, provide verifications without the improper "information and belief" qualifier, and commit that future interrogatory responses will be provided in the same manner. We have also offered other solutions, including an agreement whereby (i) Defendants amend all their current interrogatory responses to include all knowledge (after a reasonably diligent inquiry) of the individual Defendants and others within their control, including counsel, and, (ii) to the extent Defendants contend it is necessary as to any specific responses, Defendants may provide verifications with an "information and belief" qualifier," with Defendants stipulating that any responses verified on "information and belief" could be used by MCI as though the improper "information and belief" qualifier were not there.

Because Defendants—in contravention of the Federal Rules—appear unwilling to accept these reasonable proposals, and aim to place MCI in a situation whereby MCI must either accept incomplete interrogatory responses or improperly verified interrogatory responses (with the risk that MCI may not be able to use such responses on summary judgment, for example), MCI has no choice but to seek Court intervention.

### Defendants' Document Productions

As we have explained several times, Defendants' insufficient efforts to locate and/or obtain responsive documents have, as to be expected, resulted in deficient productions. Case in point, while you did not disagree that Defendants were obligated to do so, you confirmed during Wednesday's discussion that Defendants have not yet even attempted to determine whether third parties within their control—such as lawyers, accountants, and book authors / interviewers—have responsive documents. Similarly, Defendants have not yet determined whether family members may have responsive documents, including files from the Defendant Contributors themselves. This is unacceptable.

As you know, per Judge Kaplan's recent order, MCI will be completing its productions by August 22, 2022.[1] MCI has repeatedly sought confirmation as to when Defendants expect their

---

[1] Of course, MCI will comply with Judge Kaplan's order. For the avoidance of doubt, however, consistent with its obligation under the Federal Rules to supplement its productions, MCI reserves the right to produce any subsequently identified documents after August 22.



document productions to be complete but Defendants have refused to answer.  Defendants should similarly produce all previously unproduced documents on or before August 22.[2]  This will help ensure that depositions may move forward thereafter, with the parties having the benefit of both parties' productions, which inures to the benefit of all parties.  Please immediately confirm Defendants will do so, or we will seek Court intervention.

Finally, per the parties' agreement, Defendants agreed to produce any document productions from *Kirby* that MCI was unable to locate and produce from its own files.  Per MCI's July 7 email, MCI has produced all *Kirby* production files that it currently possesses and requested that "the Kirbys and the Defendants [ ] review and produce the *Kirby* documents which they have that Marvel does not have, if any."  While Defendants did not respond to this email, during Wednesday's call, Defendants confirmed that they are still in the process of reviewing these materials to identify any additional documents that Defendants have from *Kirby* productions.  As per the above paragraph, these documents must be produced on or before August 22.

## Marvel's Second Set of Interrogatories

As a general matter, you agreed to "tie off" Defendants' responses to several of MCI's interrogatories, which have been open for some time.  When "tying off" their responses, Defendants must provide full and complete responses, which must, among other things, remedy the deficiencies identified in MCI's July 15 letter.  Your July 29 letter says Defendants "hope to serve amended responses to these interrogatories on or before August 12, 2022."  Given that Defendants have known since July 15 the issues that MCI has taken with Defendants' responses (which were originally due July 3), Defendants must address this more promptly.  Please confirm Defendants will provide these amended responses by August 8.  Additional comments regarding particular interrogatories are below.

### *Interrogatory No. 1*

Interrogatory No. 1 asks Defendants to "Describe the steps that You have taken to preserve Documents and information Concerning Steve Ditko, the Works, and/or Marvel . . . Including when such steps were taken."

You stated that you provided instructions to retain documents to the Defendants "shortly before serving the termination notices."  Please confirm with greater specificity (a) when that instruction took place (i.e., what date), and (b) how that instruction was given, e.g. orally or in writing.

---

[2]  To be clear, MCI expects the same of the non-S.D.N.Y. Defendants, even in the absence of a stipulation in E.D.N.Y. or C.D. Cal.

### *Interrogatory No. 2*[3]

Interrogatory No. 2 asks each Defendant to "Identify which, if any, of [Deceased Contributor]'s Documents, You consider outside of Your possession, custody, or control and, for any such documents, identify who You believe has possession, custody, or control."

As MCI noted during the call, it is still unclear what Defendants mean by stating that they have "insufficient personal knowledge," as opposed to "no personal knowledge." You explained that "insufficient knowledge" is not as low as having "no knowledge" given that Defendants may have "suggestions" of who else may have documents. Given that you agreed to take a closer look at this (and MCI still doesn't fully understand what Defendants mean by "insufficient" knowledge"), please confirm this meaning and amend Defendants' responses accordingly.

To be clear, MCI is trying to understand if there are any of the Defendant Decedents' documents that are not being produced because some person other than Defendants is presently in possession of those documents. For example, Patrick Ditko may not possess all of Steve Ditko's documents, but he may know or believe that one of his siblings, nieces or nephews, former attorney or accountant, or the local Johnstown, PA library possesses or may possess them. Indeed, in his correspondence with David Currie, Mark Ditko stated that he is "the main driver," that he has "100+ letters" collected from Steve Ditko's studio floor, and that Steve Ditko sent Mark Ditko "boxes and boxes of his older comics." Clearly, the universe of documents that Defendants have produced is much narrower than the universe of documents they could reasonably gather. Yet this is the sort of investigation that Defendants have an obligation to make, and MCI is entitled to a response confirming it has occurred or is occurring, as well as any responsive documents that are identified as a result.

Further, as an example, we discussed Defendants' efforts to obtain documents from Currie, who may possess some of Steve Ditko's documents. Your July 29 letter attempts to blame MCI for not attempting to obtain these documents from Mr. Currie. But you ignore that the Ditko family has a relationship with Mr. Currie (as illustrated by the fact that Mark Ditko wrote a foreword and provided pictures for the book), and that MCI has been urging the Ditko family to make the inquiry of Mr. Currie for months. In any event, you stated that you reached out to Mr. Currie by email early last week. Please provide us with precisely when this contact occurred and confirm that you will be producing any responsive documents that you receive in request.

### *Interrogatory No. 3*

Interrogatory No. 3 asks Defendants to "Identify which, if any, of [the Deceased Contributor's] Documents" relevant to this action "You consider lost or destroyed, how and why such Documents were lost or destroyed, and when."

Related to Interrogatory No. 2, MCI is entitled to know what happened to the Decedent's files, including whether those files were lost or destroyed and, if so, when and how. For example,

---

[3] Interrogatories No. 2 and 3 were not served on Larry Lieber, as unlike the other defendants, Lieber served purported termination notices on his behalf.

4



even though Steve Ditko died in 2018, based on their productions, it does not appear that either Patrick Ditko or Mark Ditko have his files.  In response to Interrogatories No. 2 and 3, Patrick Ditko must investigate what happened to Steve Ditko's files at the time of his death.  We expect the same of Dettwiler, the Colan Heirs, and the Rico Heirs, to the extent not done already.

### *Interrogatory No. 4*

Interrogatory No. 4 asks Defendants to "Describe Your efforts to identify, obtain, and/or collect Documents responsive to MCI's Requests for Production."

The parties discussed that Defendants' responses should include the steps taken by counsel, not just those by the Defendants themselves.  You emphasized that Defendants are individuals without standard document retention protocols so, naturally, your firm has been significantly involved in Defendant's collection efforts.  To be clear, we are not seeking to invade privilege or attorney work product protections, but to the extent you (as potential custodians of relevant material) took steps on their behalf to collect responsive documents, Defendants' response to this interrogatory should describe those efforts as well.  Fittingly, your explanation during the call of how document retention works with individuals strongly suggests that counsel bore significant responsibility in the Defendants' collection efforts.  Please confirm that you will amend Defendants' responses accordingly.

### **Defendants' July 28 Letter**

We are in receipt of your July 28 letter interposing 17 questions (across all five cases) about MCI's collection efforts.  Last May, however, Defendants refused to answer MCI's more limited questions about Defendants' collection efforts and instead insisted that MCI proceed via interrogatory.  As noted above, the same rules must apply to the parties.  To this end, please explain why Defendants contend MCI should answer Defendants' questions without them being posed as interrogatories.

*          *          *

Given how long many of these important issues have been outstanding, we ask for your written response by August 8, 2022.  All rights reserved.

Very truly yours,

*/s/ Allen W. Burton*


Allen W. Burton
Of O'Melveny & Myers LLP

5