DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
MOLLY M. LENS (S.B. #283867)
mlens@omm.com
DANIELLE FEUER (S.B. #324174)
dfeuer@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone: +1 310 553 6700
Facsimile: +1 310 246 6779

*Attorneys for Plaintiff Counterclaim-*
*Defendant Marvel Characters, Inc.*
*(additional counsel on page two)*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARVEL CHARACTERS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICHELE HART-RICO and BUZ DONATO F. RICO III, <br><br> Defendants. | Case No.: 2:21-cv-07624-DMG-KES <br><br> [DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE JUDGE KAREN E. SCOTT] <br><br> **JOINT STIPULATION ON MARVEL CHARACTERS, INC.'S MOTION TO COMPEL DEFENDANTS' PRODUCTION OF DOCUMENTS** |
| MICHELE HART-RICO and BUZ DONATO F. RICO III, <br><br> Counterclaimants, <br><br> v. <br><br> MARVEL CHARACTERS, INC. and DOES 1-10, inclusive, <br><br> Counterclaim-Defendants. | Date: September 20, 2022 <br> Time: 10:00 a.m. <br> Courtroom: 6D <br><br> Non-expert Discovery Cutoff: November 18, 2022 <br> Pretrial Conf.: May 9, 2023 <br> Trial: June 6, 2023 |

ALLEN W. BURTON (admitted *pro hac vice*)
aburton@omm.com
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York  10036-6537
Telephone:   +1 212 326 2000
Facsimile:    +1 212 326 2061

KENDALL TURNER (S.B. #310269)
kendallturner@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC  20006-4061
Telephone:   +1 202 383 5300
Facsimile:    +1 202 383 5414

*Attorneys for Plaintiff and Counterclaim-*
*Defendant Marvel Characters, Inc.*
*(ctd.)*

## <u>TABLE OF CONTENTS</u>

I.   MCI'S INTRODUCTION ............................................................ - 1 -

II.  THE RICOS' INTRODUCTION................................................... - 3 -

III. MCI'S CONTENTIONS ............................................................ - 6 -

   A.   **Defendants Must Commit to a Date Certain to Complete Their Productions.** ............................................................................... - 6 -

   B.   **Defendants Must Produce Relevant Materials.** ...................... - 7 -

      i.   *Materials Referenced on Buz Rico's Website.*...................... - 9 -

      ii.  *Documents Exchanged with David Currie.* ...................... - 15 -

      iii. *Communications with the Copyright Office.* ...................... - 16 -

      iv.  *Documents from the* Kirby *litigation.* .............................. - 17 -

IV.  THE RICOS' CONTENTIONS.................................................. - 19 -

   A.   **Background**........................................................................... - 19 -

   B.   **Marvel's "Instance and Expense" Defense**............................. - 19 -

   C.   **Marvel's Motion Must be Denied because Marvel Failed to Meet and Confer on the Issues Presented** .............................................. - 20 -

   D.   **Marvel's Motion was Brought in Bad Faith**............................ - 23 -

   E.   **Marvel's Motion Should be Denied on the Merits as Based Solely on Loose Speculation** ................................................................ - 24 -

      1.   *The Ricos have Diligently Searched for Relevant Documents.* ........ - 25 -

      2.   *The Ricos do not have Possession, Custody, or Control of David Currie's Documents.* ...................................................... - 27 -

      3.   *The Ricos do not have Possession, Custody, or Control of the Kirbys' Documents; the Kirbys are Producing Them.* ............................ - 30 -

      4.   *Marvel did not Meet and Confer Regarding Communications with the Copyright Office, which the Ricos Already Produced.* ..................... - 31 -

      5.   *There are No Documents Associated with Buz Rico's Website or Facebook Page.* ......................................................... - 32 -

   F.   **Marvel Should be Sanctioned for Its Frivolous Motion** ................... - 34 -

V.   MCI'S CONCLUSION............................................................. - 36 -

VI.  THE RICOS' CONCLUSION ................................................... - 36 -

I.   **MCI'S INTRODUCTION**

Plaintiff Marvel Characters, Inc. ("MCI") seeks an order compelling Defendants Michele Hart-Rico and Buz Donato F. Rico III ("Defendants") to (i) complete their document production by a date certain and (ii) confirm an appropriate search for responsive documents to MCI's discovery requests has occurred and such documents have been (or will be) produced by that stated date certain.

Last year, Defendants—the widow and son of comic book artist Donato Francisco Rico II ("Don Rico")—decided to try to upend the status quo of more than half a century and served a purported termination notice on MCI contending that they could "recapture" the rights to two comic books to which Don Rico had contributed in the early 1960s.  Defendants asserted this claim even though previous attempts by the heirs of other artists (represented by same counsel) had been rejected because works made for hire are not eligible for termination under the Copyright Act.  *See, e.g.*, *Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 738 (S.D.N.Y. 2011), *aff'd in relevant part*, 726 F.3d 119 (2d Cir. 2013) ("*Kirby*"); *In re Marvel Entertainment Grp.*, 254 B.R. 817 (D. Del. 2000) ("*Wolfman*").  The facts here are essentially the same to those in *Kirby* and *Wolfman*—and would involve the same witnesses too, but for Defendants' decade-long delay in asserting their ostensible termination right.[1]

Nearly four decades after Don Rico's death, Defendants now claim that his contributions were *not* made for hire.  But Defendants have adduced no evidence suggesting Don Rico took issue with Marvel regarding the nature of his work on its

---

[1] Defendants claim a termination right in works whose copyright was first secured in 1964.  Per the copyright termination statute, a purported notice of termination thus could have been served as early as 2010.  *See* 17 U.S.C. § 304 (termination may be effected 56 years from date copyright secured; termination notice may be served up to 10 years before effective date).  Several witnesses passed away in the intervening years—though fortunately, key testimony (including that of Stan Lee) has been preserved and will be introduced in this case.

comics during Don Rico's nearly forty-year Marvel career—spanning his early days as an artist, writer, and staff editor under "boss" Stan Lee at then-nascent Marvel during the "Golden Age of Comics," to his later work within the expanded Marvel Super Hero comics universe. Ex. 11. Nonetheless, after his passing, his widow and son now contend otherwise.

Recognizing the challenges they face on the merits, Defendants have focused their efforts on attempting to cast aspersions on MCI's evidence-gathering, which has involved an extensive review of materials dating back decades. But Defendants have not satisfied their own obligations. In response to MCI's Requests for Production ("RFPs"), served back in February, Defendants agreed to produce a wide variety of documents. In the intervening six months, however, Defendants collectively have produced fewer than thirty documents—and mostly inconsequential ones, at that. And Defendants have apparently failed to explore all repositories reasonably likely to contain responsive information, including those of third parties within their possession, custody, or control. In addition, despite many requests from MCI over many months, Defendants refuse to commit to a date to complete their productions. After reaching an impasse in meet-and-confer discussions spanning half a year[2]—including Defendants' rejection of MCI's reasonable offer that all parties be held to the same production deadline[3]—MCI now brings this dispute before the Court for resolution.

---

[2] *See* Exs. 1-10.
[3] *See* Ex. 4.

II.    **THE RICOS' INTRODUCTION**

Marvel's unnecessary Motion is a counterweight to save face before this Court, but has the opposite effect. Defendants Michele Hart-Rico and Buz Donato F. Rico III (the "Ricos"), the surviving wife and son, respectively, of Don Rico, previous moved to compel Marvel's production of documents in critical categories responsive to their Requests for Production ("RFPs") (Dkts. 37-38). Marvel, keen to deflect and misdirect this Court's attention away from its own discovery deficiencies, immediately submitted this gratuitous, and frankly, disingenuous, Motion in response. Marvel was particularly motivated to engage in such deflection, after Judge Kaplan, in three Southern District of New York cases, granted the defendants' motion to compel in its entirety, under similar circumstances, and ordered Marvel to produce documents in categories parallel to those outlined in the Ricos' motion to compel here. Declaration of Jaymie Parkkinen ("Parkkinen Decl.") Ex. 25. Thus, Marvel's Motion is little more than a series of manufactured "disputes." Indeed, in an effort to fabricate something to support its Motion, Marvel raised *for the first time* things like Buz Rico's (publicly available) Facebook page, never once mentioned in the meet-and-confer process.

Notwithstanding all of the above, the Ricos reached out to Marvel and essentially offered to provide them with *all of the relief their Motion requested* in an effort to avoid this unnecessary motion practice. Parkkinen Decl. Ex. 26 at 1. Marvel nonetheless responded with obfuscation, intent on bringing its mooted Motion, further underscoring its improper purpose. *Id*. at 5-6. Marvel's Motion is based on no more than unsupported speculation and false innuendo—a frivolous distraction that this Court should swiftly deny.

As this Court may know, Don Rico was a prolific and multi-talented artist./. *See e.g.*, Parkkinen Decl. Ex. 27. He created and performed in numerous different media including as a singer, wood engraver, novelist, screenwriter, album cover designer, painter, and comic book author. Indeed, Don Rico was the renowned co-

1   creator of the heroine "Black Widow," which he created on a freelance basis in

2   1964, and which was featured in two original comic book stories entitled "The

3   Crimson Dynamo Strikes Again!" and "The Black Widow Strikes Again!" (the

4   "Works"), that Marvel published. Parkkinen Decl. Ex. 28 (Dkt. 22)

5   ("Counterclaim") ¶ 1. The Ricos, as the author's statutory heirs, properly exercised

6   his "termination rights" under the Copyright Act, 17 U.S.C. §304(c), to recover his

7   copyright interest in the Works by statutorily terminating his copyright transfers to

8   Marvel in 1963 when the Works were purchased and 1964 when they were first

9   published (the "Creation Period"). Counterclaim ¶ 2, Ex. A. The termination right is

10  arguably *the* most important authorial right in the Act, after copyright itself, as it

11  enables authors and surviving family to finally participate to some degree in the

12  value of an author's creations once it is no longer conjectural. *Mills Music, Inc. v.*

13  *Snyder*, 469 U.S. 153, 173 (1985), citing H. R. Rep. No. 94-1476, at 124 (1976).

14  The sole exemption from termination is "work made for hire." 17 U.S.C. §304(c).

15  Thus Marvel, like most terminated grantees, asserted in hindsight that all the Works

16  were "made for hire." Parkkinen Decl. Ex. 29 (Dkt. 1) ("Complaint") ¶¶ 23-24.

17          Since approximately, March 9, 2021, when the Ricos contemplated

18  exercising their termination rights regarding the Works, they began to search for

19  and collect documents which might be relevant to this. Lens Decl. Ex. 14 B. Rico

20  Resp. at 9, M. Hart-Rico Resp. at 9. After receiving Marvel's RFPs, the Ricos

21  continued to diligently search for responsive documents and worked closely with

22  their counsel to collect, review, and make a fulsome production of responsive

23  documents. *Id*. Ex. 14 B. Rico Resp. at 14-15, M. Hart-Rico Resp. at 14-15. Don

24  Rico died nearly forty years ago. The Ricos, who are his individual heirs, without

25  document retention policies or consolidated ESI platforms, were nonetheless able to

26  produce dozens of documents dating from the 1960s and 1970s; a sizable

27  production given the age of the documents and their status. The Ricos, who

28  continued to search for documents, informed Marvel that their production would be

1  substantially completed by August 29, 2022. *See Id*. Ex. 4 at 4 ("Defendants expect

2  that their productions will be substantially completed by August 29."). The Ricos

3  also forthrightly responded to Marvel's interrogatories, detailing their diligent

4  search efforts and the loss or destruction of many of Don Rico's documents in New

5  York decades ago. *Id*. Ex. 14 B. Rico Resp. at 13, M. Hart-Rico Resp. at 13.

6  Despite all of this, Marvel raced to file this gratuitous Motion so that, when this

7  Court hears the Ricos' motion to compel Marvel's production, Marvel will be able

8  to deflect with the hope that this Court will throw up its hands, do nothing or grant

9  both motions. To this end, Marvel's Motion, which is long on vague finger-pointing

10  but short on details, employs several tactics to mislead the Court.

11      For instance, Marvel conflates the Ricos with the defendants in the other four

12  termination cases[4] by loosely shifting between "Defendants" in this case and

13  "defendants" in all five cases. By so doing, Marvel attempts to whitewash the

14  important distinctions between each defendant, each creator, work and case. Marvel

15  seeks to attribute the alleged obligations of defendants in different cases to the

16  Ricos in an effort to manufacture a "dispute" to get in front of this Court. To avoid

17  Marvel's shell game, the Ricos refer to themselves by name. Further still, as

18  previously stated, the Ricos informed Marvel, *prior to* the submission of its Motion,

19  that their production would be substantially completed by August 29, 2022. Lens

20  Decl. Ex. 4 at 4. Marvel's contrary representation to this Court is false. Marvel's

21  Motion is a whitewash of unsupported accusations. It is incorrect, improper as to

22  items never raised in the parties' meet-and-confer discussions, and in any event,

23  moot given the Ricos' resolution on August 18 of all purported issues raised in the

24  Motion. As such, Marvel's makeweight Motion must be denied.

25

26  ───────────────

[4] *Marvel Characters, Inc. v. Lieber*, No. 1:21-cv-07955-LAK (S.D.N.Y.); *Marvel

27  Characters, Inc. v. Ditko*, No. 1:21-cv-07957-LAK (S.D.N.Y.); *Marvel Characters,

Inc. v. Dettwiler*, No. 1:21-cv-07959-LAK (S.D.N.Y.); *Marvel Characters, Inc. v.

28  Solo*, No. 1:21-cv-5316-DG-TAM (E.D.N.Y.).

III.   **MCI'S CONTENTIONS**

    A.   **Defendants Must Commit to a Date Certain to Complete Their Productions.**

In response to MCI's Requests for Production ("RFPs"), served in February, Defendants agreed to produce a wide variety of documents.  However, in the intervening six months, Defendants have produced fewer than thirty, largely inconsequential documents.  Outside of two articles and a handful of personal correspondence between Don Rico and Marvel editor Stan Lee, the balance of Defendants' production consists of Buz Rico's birth certificate, Michele Hart-Rico's marriage certificate, and an assortment of agreements and contract negotiation documents relating to Don Rico's work on erotica thriller novels for other publishers.  Notably, Defendants have not produced a single document that concerns the two Works that are the subject of their purported termination notice.

What is more, despite many requests from MCI, Defendants refuse to commit to a date to complete their productions.  *See, e.g.*, Ex. 4.  But the Federal Rules *require* that Defendants agree to complete their productions by a date certain. *See, e.g.*, Fed. R. Civ. Pro. 34(b)(2)(B) (production must be made when responses are served or "another reasonable time specified in the response"); *see also* Fed. R. Civ. P. 34(b)(2)(B) 2015 Advisory Committee's Note (responses "should specify the beginning and end dates of the production"); *Evox Prods. v. Kayak Software Corp.*, 2016 WL 10586303, at *4 (C.D. Cal. June 14, 2016) (holding that responses that do "not specify the date for completion of [] production" violate Rule 34 and granting motion to compel); *Fischer v. Forrest*, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) (same).  Indeed, Defendants' counsel has expressly recognized this requirement.  Ex. 12 (Defendants' counsel noting that parties "must state a definite end date on which production will be complete").  Yet, in their latest attempt to dodge MCI's demand that Defendants comply with Rule 34, Defendants tried to insist that MCI agree to a number of punitive conditions in exchange for

Defendants agreeing to a "substantially complete[]" production deadline. *See* Ex. 4. MCI suggests the Court reject Defendants' gamesmanship and order them to comply with Rule 34. This is especially important considering (1) the need to complete depositions ahead of the November 18 fact discovery deadline; (2) Defendants' recalcitrance in producing documents; and (3) their improper attempt to use their refusal to comply with Rule 34 as a negotiating chip during the meet-and-confer process.

### B. **Defendants Must Produce Relevant Materials.**

Defendants do not dispute that they have not produced all responsive, non-privileged documents. Accordingly, there is no doubt that MCI meets the standard justifying an order compelling completion of Defendants' documents. *See Bagdasaryan v. City of Los Angeles*, 2017 WL 10560536, at *7 (C.D. Cal. Nov. 1, 2017) (Scott, J.) ("[T]he moving party must have a colorable basis for its belief that relevant, responsive documents exist and are being improperly withheld."); *see also Sidman v. Concord Arena Parking, LLC*, 2021 WL 1940255, at *2 (E.D.N.Y. May 11, 2021). Furthermore, one of the substantial areas of dispute is that Defendants take an overly narrow view of their obligation to search for and collect responsive documents from repositories within their control. While MCI acknowledges that individual parties (as opposed to organizations) often have fewer retained documents, that is no basis to avoid searching sources that are within reach and likely to contain relevant material.

Defendants' approach to their discovery obligations has been haphazard at best. Their strategy in this litigation has become all too clear: aggressively lob accusations at MCI, despite its over-and-above discovery efforts, all while searching for and collecting as little as they think they can get away with. Defendants' assertion that they simply do not have responsive documents is particularly dubious given that Buz Rico has taken it upon himself to be a guardian

of his father's legacy and has maintained a website and a separate Facebook page devoted to Don Rico's life's work.  Defendants' meager productions result not from a lack of resources or control, but rather from a lack of trying.

A case in point is Defendants' approach to contacting and searching for documents from David Currie, the author of "*ditko shrugged*," a 2021 book exploring, *inter alia*, working for Marvel during the 1960s.[5]  Based on extensive personal correspondence with Steve Ditko—a contemporary of Don Rico—Currie details Ditko's career and the "Rise of Marvel Comics," in part through "the stories of Steve Ditko's contemporaries . . . working in the comic industry."  *See* Ex. 13. Defendants themselves now admit that Currie is reasonably likely to have responsive information concerning Defendants' purported termination attempt.  *See* Ex. 14.  For ***months***, however, Defendants' counsel evaded questions about their outreach to Currie, with Defendants' counsel even once suggesting that his documents were somehow within *MCI*'s possession, custody, or control.  *See* Exs. 15-17.  This, of course, ignores that the defendants (across the pending cases) were the ones corresponding with Currie and providing him with highly relevant information to their posthumous revisionist claims that work for Marvel was not done on a work-made-for-hire basis.  Indeed, after months of delay and distraction, when MCI ultimately took matters into its own hands and reached out to Currie, Defendants' counsel swiftly informed MCI that they now represent Currie and that MCI should cease communicating with him.  Ex. 18.  If Defendants had shown the same tenacity in attempting to retrieve documents from Currie (and other similarly

---

[5] Steve Ditko's family—represented by counsel of record in this case—similarly served purported termination notices on his behalf.  That case, along with two other related cases, have been consolidated in the Southern District of New York, and a fifth case is pending in the Eastern District of New York.  *See Marvel Characters, Inc. v. Lieber*, No. 1:21-cv-07955-LAK (S.D.N.Y.); *Marvel Characters, Inc. v. Ditko*, No. 1:21-cv-07957-LAK (S.D.N.Y.); *Marvel Characters, Inc. v. Dettwiler*, No. 1:21-cv-07959-LAK (S.D.N.Y.); *Marvel Characters, Inc. v. Solo*, No. 1:21-cv-5316-DG-TAM (E.D.N.Y.).

situated third parties) as they did in giving MCI the run-around, it is likely that MCI would be in receipt of more than the meager thirty or so documents that MCI has received from Defendants to date.

MCI does not endeavor to catalogue every single document within Defendants' control that they have failed to collect and/or produce. That would be a fool's errand. But MCI has numerous, concrete examples of glaring deficits in Defendants' productions—more than enough to cast doubt on the integrity of Defendants' discovery operation writ large. Unlike Defendants, MCI does not need to resort to speculation or hunches to call into question Defendants' productions. MCI's motion should be granted accordingly. Defendants' halfhearted approach to responsive discovery—all while demanding much more than what is required of MCI—cannot be allowed to continue.

While the examples below illustrate a few specific instances of Defendants' failure to adequately search for and produce responsive information, Defendants should be ordered to produce *all* nonprivileged, responsive documents—including those maintained by third parties within Defendants' possession, custody, or control. *See Desire, LLC v. Rainbow USA, Inc.,* 2016 WL 6106740, at *3 (C.D. Cal. June 29, 2016) (granting motion to compel based on an inadequate search, ordering documents to be produced by a specified date, and requiring a declaration stating that all had been produced).[6]

### i.   *Materials Referenced on Buz Rico's Website*.

Buz Rico created an "[o]fficial website and information repository" for "archiv[ing]" information pertaining to his father, Don Rico. *See* Ex. 19. On this website, Buz Rico quotes and/or references a number of materials responsive to

---

[6] Unlike MCI's interrogatory response regarding its collection efforts, *see* Ex. 23, Defendants do not affirm in their responses that they have produced all nonprivileged, responsive documents. This underscores why MCI's motion to compel, unlike Defendants', should be granted.

MCI's RFPs.  However, even though MCI repeatedly raised this website during meet-and-confer discussions, *see, e.g.*, Exs. 6-10, Defendants' amended interrogatory responses make no mention of Buz Rico's website nor any search for the documents cited therein, demonstrating clear deficiencies in Defendants' search efforts.  *See* Ex. 14.

For example, Buz Rico quotes a reference letter by Stan Lee in which Lee describes his working relationship with Rico, explaining that "I have known Don under the most critical circumstances, *as his boss*."  Ex. 11 (emphasis added). MCI's own search for this reference letter has proven fruitless, suggesting—as one would reasonably expect—that it remains in the possession, custody, or control of Don Rico's family.  This highly relevant piece of evidence—confirming that Don Rico worked at Marvel's instance—must be produced.

Buz Rico also appears to have sought out his father's artwork, noting on his webpage that "[s]ubmissions are gladly accepted, especially scans of artwork."  *See* Ex. 19.  Yet Defendants have not produced even a single piece of artwork, casting further doubt on the adequacy of their searches.  Similarly, Buz Rico references correspondence between Don Rico and Mark Evanier—a purported comic book historian—regarding Don's use of pen names when working for Marvel.  *See* id. This correspondence, again, was not produced.

Buz Rico also references a 1977 Don Rico interview with Ronald Levitt Lanyi entitled "The Once and Future Don Rico," an interview which—as MCI retrieved though its own efforts—describes Rico's involvement in the "creator's rights movement" after his "rights to strips" were not met.  *See* Ex. 20.  Even though Buz Rico addresses this interview of his father on his website, Buz Rico did not produce it in response to MCI's document requests which asked him to furnish all interviews by his father.  *See* Ex. 21.  Even if MCI is able to obtain copies of this interview on its own, this does not relieve Defendants of their obligation to produce copies within *their* possession, custody, or control.

Given Buz Rico's own acknowledgment that document retention is essential so as to avoid "los[ing] priceless information . . . since many sites disappear over time," Buz Rico clearly well understands the importance of retaining sources that bear on the nature of his father's work for Marvel.  *See* Ex. 19.  Putting aside any potential spoliation issues, either Buz Rico no longer adheres to his own professed views on document retention or Defendants have failed to adequately search such sources.  To the extent documents pertaining to Don Rico's Marvel career, including those relating to the works at issue, were retained, Defendants must search for and produce any responsive documents.

In a similar vein, Buz Rico maintains an active Facebook account for Don Rico—with the most recent posting taking place just weeks ago—yet Defendants did not produce the source material therefrom.  *See* Ex. 22 ("This page is a memorial to my father, Don Rico.").  Buz Rico's contention that he lacks meaningful records of his father's career is belied by his active role in and maintenance of these commemorative sites.

The RFPs and Amended Responses regarding this category of requested documents are as follows:

> **REQUEST FOR PRODUCTION NO. 2:**
> All Communications between You and/or Don Rico, on the one hand, and Marvel, on the other, Concerning the Works or the nature of Don Rico's contributions to the Works.
>
> **AM. RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**
> Defendant objects to this Request because it is overbroad, unduly burdensome, and does not comply with Rule 34's requirement that the requested documents must be described with reasonable particularity, insofar as it seeks "all" documents without regard to whether such documents are relevant to this action. Such a request is not proportional to the needs of this case as the burden and/or expense this Request entails far outweigh(s) any potential benefit. Defendant further objects to this Request to the extent that it seeks communications or items protected by the attorney-client privilege,

the attorney work product doctrine, and any other privilege or immunity available under law or arising from contractual obligation. In addition, Defendant is interpreting "contributions" to mean "creative/artistic contributions" and will produce documents consistent with that understanding. Subject to, and without waiving, the General Objections and these specific objections, Defendant will conduct a reasonably diligent search of documents within Defendant's possession, custody, or control and will produce all non-privileged, responsive documents, to the extent any such documents exist and are not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 6:**
All Documents reflecting or evidencing that Marvel took the position that the Works and/or Don Rico's contributions to the Works were made on a work-made-for-hire basis.

**AM. RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**
Defendant objects to this Request because it is overbroad, unduly burdensome, and does not comply with Rule 34's requirement that the requested documents must be described with reasonable particularity, insofar as it seeks "all" documents without regard to whether such documents are relevant to this action. Such a request is not proportional to the needs of this case as the burden and/or expense this Request entails far outweigh(s) any potential benefit. Defendant further objects to this Request to the extent that it seeks communications or items protected by the attorney-client privilege, the attorney work product doctrine, and any other privilege or immunity available under law or arising from contractual obligation. Subject to, and without waiving, the General Objections and these specific objections, Defendant will conduct a reasonably diligent search of documents within Defendant's possession, custody, or control and will produce all non-privileged, responsive documents, to the extent any such documents exist and are not otherwise subject to a protective order or confidentiality requirement

**REQUEST FOR PRODUCTION NO. 7:**
Documents sufficient to show when You and/or Don Rico first understood, appreciated, learned, read, or were told or informed that Marvel contended that Don Rico's contributions to the Works were

made on a work-made-for-hire basis and/or that Don Rico was not an Author of the Works.

**AM. RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**
Defendant objects to this Request to the extent that it seeks communications or items protected by the attorney-client privilege, the attorney work product doctrine, and any other privilege or immunity available under law or arising from contractual obligation. Defendant objects to this Request on the grounds that "understood" and "appreciated" are vague and ambiguous however, Defendant will interpret these terms in good faith given their normal meanings. Subject to, and without waiving, the General Objections and these specific objections, Defendant will conduct a reasonably diligent search of documents within Defendant's possession, custody, or control and will produce all non-privileged, responsive documents, to the extent any such documents exist and are not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 8:**
All Documents Concerning the contributions of any Persons, Including Don Rico and Lee, to any of the Works, Including (i) the identities of all such contributors, (ii) the nature and scope of their respective contributions, and (iii) the circumstances under which they made such contributions, Including whether they made such contributions as an employee, independent contractor, or freelancer.

**AM. RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**
Defendant objects to this Request because it is overbroad, unduly burdensome, and does not comply with Rule 34's requirement that the requested documents must be described with reasonable particularity, insofar as it seeks "all" documents without regard to whether such documents are relevant to this action. Such a request is not proportional to the needs of this case as the burden and/or expense this Request entails far outweigh(s) any potential benefit. Defendant further objects to this Request to the extent that it seeks communications or items protected by the attorney-client privilege, the attorney work product doctrine, and any other privilege or immunity available under law or arising from contractual obligation. In addition, Defendant is interpreting "contributions" and "contributors" to mean "creative/artistic contributions and those who provided such contributions" and will produce documents consistent

with that understanding. Subject to, and without waiving, the General Objections and these specific objections, Defendant will conduct a reasonably diligent search of documents within Defendant's possession, custody, or control and will produce all non-privileged, responsive documents, to the extent any such documents exist and are not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 26:**
All statements (published or unpublished) by You, Don Rico, and/or Your or Don Rico's agents, representatives, family members, or relatives Concerning (i) the Works, (ii) contributions to the Works by Don Rico or others, (iii) ownership interests in or to the Works, (iv) authorship of or to the Works, or (v) Don Rico's business relationship with Marvel.

**AM. RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**
Defendant objects to this Request because it is overbroad, unduly burdensome, and does not comply with Rule 34's requirement that the requested documents must be described with reasonable particularity, insofar as it seeks "all" documents and insofar as it seeks "all statements by family members or relatives" without regard to whether such documents are relevant to this action. Such a request is not proportional to the needs of this case as the burden and/or expense this Request entails far outweigh(s) any potential benefit. Defendant further objects to this Request to the extent that it seeks communications or items protected by the attorney-client privilege, the attorney work product doctrine, and any other privilege or immunity available under law or arising from contractual obligation. Defendant further objects to this Request on the grounds that it is vague, ambiguous, and confusing, for instance, as to the meaning of "authorship . . . to the Works." Despite these terms being vague and ambiguous and the phrasing confusing, Defendant will interpret this Request in good faith giving words their normal meanings. Subject to, and without waiving, the General Objections and these specific objections, Defendant will conduct a reasonably diligent search of documents within Defendant's possession, custody, or control and will produce all non-privileged, responsive documents, to the extent any such documents exist and are not otherwise subject to a protective order or confidentiality requirement.

**REQUEST FOR PRODUCTION NO. 27:**

All interviews Concerning any of the Works or Don Rico.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Defendant objects to this Request because it is overbroad, unduly burdensome, and does not comply with Rule 34's requirement that the requested documents must be described with reasonable particularity, insofar as it seeks "all" documents without regard to whether such documents are relevant to this action. Such a request is not proportional to the needs of this case as the burden and/or expense this Request entails far outweigh(s) any potential benefit. Subject to, and without waiving, the General Objections and these specific objections, Defendant will conduct a reasonably diligent search of documents within Defendant's possession, custody, or control and will produce all non-privileged, responsive documents, to the extent any such documents exist and are not otherwise subject to a protective order or confidentiality requirement.

    ii.  ***Documents Exchanged with David Currie***.

David Currie is an individual reasonably likely to have nonprivileged, responsive information, such as correspondence or source materials evidencing the way in which contributors worked for Marvel during the relevant time period, *i.e.*, the "Marvel Method." And Defendants unquestionably have access to Currie's documents. In fact, the defendants across the five pending cases provided interviews and correspondence to Currie about the nature of their (or, where applicable, their relatives') work for Marvel during the relevant time period. For this reason, MCI has repeatedly asked that Defendants confirm that they are obtaining—and producing—all responsive information that Currie has, including correspondence and interviews. But Defendants have not yet confirmed that they will be producing these documents. To the contrary, Defendants refused over many months to even reach out to Currie. But then, when MCI reached out to Currie directly, Defendants' counsel of record immediately responded, advising that Currie was represented by counsel of record as well. Yet Defendants have *still* failed to

confirm that they will be producing Currie's documents.  The RFPs and Amended

Responses regarding this category of requested documents are as follows:

**REQUEST FOR PRODUCTION NO. 35:**

All Communications with any of the parties to the following actions:
*Marvel Characters, Inc. v. Ditko*, No. 1:21-cv-07957-LAK
(S.D.N.Y.); *Marvel Characters, Inc. v. Dettwiler*, No. 1:21-cv-07959-
LAK (S.D.N.Y.); *Marvel Characters, Inc. v. Lieber*, No. 1:21-cv-
07955-LAK (S.D.N.Y.); and *Marvel Characters, Inc. v. Solo*, No.
1:21-cv-5316-DG-TAM (E.D.N.Y.).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Defendant objects to this Request because it is overbroad, unduly
burdensome, and does not comply with Rule 34's requirement that the
requested documents must be described with reasonable particularity,
insofar as it seeks "all" documents without regard to whether such
documents are relevant to this action.  Such a request is not
proportional to the needs of this case as the burden and/or expense this
Request entails far outweigh(s) any potential benefit. Defendant
further objects to this Request to the extent that it seeks
communications or items protected by the attorney-client privilege,
the attorney work product doctrine, and any other privilege or
immunity available under law or arising from contractual obligation.
Subject to, and without waiving, the General Objections and these
specific objections, Defendant will conduct a reasonably diligent
search of documents within Defendant's possession, custody, or
control and will produce all non-privileged, responsive documents, to
the extent any such documents exist and are not otherwise subject to a
protective order or confidentiality requirement.

iii.     ***Communications with the Copyright Office***.

As noted above, given the 1964 copyrights in the works at issue, Defendants

could have served a purported notice of termination as early as 2010.  *See* 17 U.S.C.

§ 304 (termination may be effected 56 years from date copyright secured;

termination notice may be served up to 10 years before effective date).  MCI

requested—and Defendants agreed to give—communications concerning the

purported termination notice at issue in this case, including any correspondence with the Copyright Office.  But again, Defendants have failed to do so.  That Defendants had their termination notices recorded means that such communications occurred.  And yet such correspondence (and the purported termination notice itself) remain unproduced.  The RFP and Response regarding this category of requested documents are as follows:

> **REQUEST FOR PRODUCTION NO. 28:**
> All Communications Concerning the Purported Termination Notices, Including correspondence with the United States Copyright Office.
>
> **RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**
> Defendant objects to this Request because it is overbroad, unduly burdensome, and does not comply with Rule 34's requirement that the requested documents must be described with reasonable particularity, insofar as it seeks "all" documents without regard to whether such documents are relevant to this action.  Such a request is not proportional to the needs of this case as the burden and/or expense this Request entails far outweigh(s) any potential benefit. Defendant further objects to this Request to the extent that it seeks communications or items protected by the attorney-client privilege, the attorney work product doctrine, and any other privilege or immunity available under law or arising from contractual obligation. Subject to, and without waiving, the General Objections and these specific objections, Defendant will conduct a reasonably diligent search of documents within Defendant's possession, custody, or control and will produce all non-privileged, responsive documents, to the extent any such documents exist and are not otherwise subject to a protective order or confidentiality requirement.

### iv.  *Documents from the* **Kirby** *litigation.*

As explained above, the facts and issues in this case overlap with the facts and issues in *Kirby*.  Accordingly, many of the documents from that litigation—such as those relating to Marvel's operation in the 1960s—are relevant to the present dispute.  By agreement of counsel, after MCI (at its own expense) had the protective order in *Kirby* lifted, MCI searched its records—and those of its prior outside counsel—to

identify and produce any *Kirby* documents that it possessed or could reasonably obtain. *See* Ex. 9. Defendants were to follow suit—including as to files within their counsel's possession, who represented the Kirbys during the prior litigation (and still does). To date, however, Defendants have failed to produce even a *single* document from that litigation. Accordingly, Defendants should be compelled to produce all documents from the *Kirby* litigation that have not been produced by MCI or identified by MCI as within its possession.[7] The RFP and Response regarding this category of requested documents are as follows:

**REQUEST FOR PRODUCTION NO. 30:**
The record evidence in and Communications Concerning Marvel Worldwide, Inc. v. Kirby, Case No. 1:10-cv-00141-CM-KNF (S.D.N.Y.) and Marvel Characters, Inc. v. Kirby, Case No. 11-3333 (2d Cir.) (collectively, the "Kirby Litigation"), the principal decisions for which are accessible at 777 F. Supp. 2d 720, 2010 WL 1655253, and 726 F.3d 119.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**
Defendant objects to this Request to the extent that it seeks communications or items protected by the attorney-client privilege, the attorney work product doctrine, and any other privilege or immunity available under law or arising from contractual obligation. Subject to, and without waiving, the General Objections and these specific objections, Defendant will conduct a reasonably diligent search of documents within Defendant's possession, custody, or control and will produce all non-privileged, responsive documents, to

---

[7] To avoid a confusing and unwieldy reproduction of *Kirby* documents, the parties agreed to the following protocol for producing such documents: "(1) Marvel w[ould] produce the full extent of its *Kirby* documents, except as necessitated by attorney-client privilege, confidentiality or PII concerns, or any applicable privilege not listed here; (2) you [Defendants' counsel] will identify the bates ranges of any *Kirby* documents that you, defendants, and/or the Kirbys have in their files that Marvel does not produce or have; and (3) defendants and the Kirbys will produce a single set of those *Kirby* documents they have that Marvel does not produce (and will not produce duplicates of the documents that Marvel produces)." Ex. 9 at 1.

the extent any such documents exist and are not otherwise subject to a protective order or confidentiality requirement.

## IV.  **THE RICOS' CONTENTIONS**

### A.  **Background**

Don Rico began his time with Marvel in the 1940s. Complaint ¶ 1. When the comic book industry collapsed in the 1950s, Don Rico packed up and moved from New York to Los Angeles to work in the movie business. *See* Counterclaim ¶ 26. Marvel, still in New York, was a miniscule operation which had only one alleged employee, Stan Lee ("Lee"). Counterclaim ¶¶ 27-28. Marvel, struggling to survive, was not the Marvel of today. *Id*. Instead, in the 1960s, Marvel was a composite of numerous shell companies. *Id*. ¶ 27. During this time, Marvel could not afford to hire any comic book creators as true employees. *Id*. ¶ 28. Instead, Marvel began to use what later became known as the "Marvel Method," in which Marvel would purchase art on a per-page basis from creators—who were expected to plot and create original content from their homes using their own materials—and publish that purchased material  in a composite comic book under their banner. *Id*. ¶¶ 28, 32-36. If Marvel did not like the pages drawn or written by a creator, it did not buy them, as in any other purchase and sale. *Id*. ¶¶ 35-36.  It is thus no surprise that Don Rico created the Works in question in his home studio, using his own instrumentalities and materials, at his own risk and expense. *Id*. ¶ 28.

Against this backdrop, the Ricos, as Don Rico's statutory heirs, properly exercised his termination rights under the Copyright Act to recover his U.S. copyright interest in the Works, which Marvel had purchased in 1963 and published in 1964. 17 U.S.C. §304(c); Counterclaim ¶¶ 1-2.

### B.  **Marvel's "Instance and Expense" Defense**

Marvel's entire case rests on its alleged defense that the Works were "work made for hire"—the sole exemption to statutory termination. Complaint ¶ 1. Marvel has alleged that whether a Work was "made for hire" turns on whether it was

created at the "instance and expense" of Marvel's predecessor that registered the original copyright to the Work. *See e.g.*, Complaint ¶¶ 1, 13, 24-25.

In all instances, including the copyright termination context, the work-for-hire analysis is fact-intensive, requiring the Court to review Don Rico's particular working relationship and the true circumstances of each Work's creation. *See Siegel v. Warner Bros. Entm't, Inc.*, 658 F. Supp. 2d 1036, 1058-60 (C.D. Cal. 2009); *Urbont v. Sony Music Entm't*, 831 F.3d 80, 90 (2d Cir. 2016) ("turns on the parties' creative and financial arrangement as revealed by the record in each case.") (internal quotation marks omitted); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 291 (2d Cir. 2002) (same). The analysis requires an evaluation of "the actual relationship between the parties, rather than the language of their agreements, in determining authorship of the work." *Simon*, 310 F.3d at 291, citing *Donaldson Pub. Co. v. Bregman, Vocco & Conn, Inc.*, 375 F.2d 639, 640-42 (2d Cir. 1967); *see also* 3 Nimmer on Copyright §11.02[A][2] (2022) ("[I]t is the relationship that in fact exists between the parties … that is determinative."). "Work for hire" is thus an individualized analysis which requires a court to look at an individual artist and the conditions under which he created each work in question.

## C.   Marvel's Motion Must be Denied because Marvel Failed to Meet and Confer on the Issues Presented

Marvel failed to meet and confer with the Ricos regarding several topics raised *for the first time* in its Motion. Specifically, Marvel never mentioned that it took issue with the Ricos' production of communications with the Copyright Office. Parkkinen Decl. Ex. 26 at 1. Indeed, it was a surprise to the Ricos that Marvel would take the position that the Ricos had not turned over the termination notices they filed with the Copyright Office given that the Ricos' service of those termination notices on Marvel is what caused Marvel to file this suit. Complaint ¶¶ 17-20, Ex. 2. Further still, the Ricos attached as Exhibit A to their Answer & Counterclaim the termination notices again (Counterclaim Ex. A (Dkt. 22-1)) and

the filing and recordation of such termination notices is readily available to Marvel via the Copyright Office's well-known electronic database[8]. Further, had Marvel simply raised this "non-issue" with the Ricos prior to filing its unnecessary Motion, the Ricos would have swiftly resolved it. In fact, after receiving notice of this alleged issue *for the first time* in Marvel's portion of this Joint Stipulation, the Ricos produced those communications with the Copyright Office in their possession or control, consisting of their notices of termination (already in Marvel's possession) and the Copyright Office's TCS Form used for recording such termination notices—mooting this issue. *See* RICO-0127–RICO-0135[9].

Marvel similarly raised Buz Rico's largely irrelevant Facebook page as an issue *for the first time* in its Motion. Parkkinen Decl. Ex. 26 at 1. While the parties had discussed a separate website maintained by Buz Rico 11 years ago in 2011— and the Ricos made clear to Marvel, *several times*, that the information on the 2011 website was cut-and-pasted from other websites and that there were no documents associated with that information—Marvel never suggested that there was any issue with Buz Rico's personal Facebook page. *Id*. Ex. 26 at 1; Lens Decl. Ex. 15 at 3. Then, only after Marvel served its Motion, *and* notwithstanding that these sites were publicly available to Marvel and it had included PDFs of the website in its Motion, Marvel insisted that the Ricos provide downloaded copies of the 2011 website and Facebook page. Parkkinen Decl. Ex. 26 at 6. The Ricos have done this as well, further mooting Marvel's Motion. *See* RICO-0136–RICO-0175[10]. Again, had Marvel simply brought this up, the Ricos would have swiftly addressed and

---

[8] *See* https://www.copyright.gov/public-records/.

[9] To avoid burdening the Court with extraneous documents, RICO-0127–RICO-0135 have not been included as exhibits. The Ricos, however, will make such documents available should the Court wish.

[10] While not attached as an exhibit, the Ricos can make these documents available to the Court as well.

- 21 -

1  resolved such easily resolvable items, notwithstanding their dubious relevance and

2  the redundant nature of the exercise.

3      Because Marvel failed to meet and confer in good faith about the dubious

4  issues presented in its Motion, contrary to both the Federal and Local Rules, its

5  Motion should be denied out of hand; and it is well within this Court's discretion to

6  do so. *See* Fed. R. Civ. P. 37(a)(1); C.D. Cal. L.R. 37-1 ("Before filing any motion

7  relating to discovery . . . , counsel for the parties must confer in a good-faith effort

8  to eliminate the necessity for hearing the motion or to eliminate as many of the

9  disputes as possible."); *see also, e.g.*, *Sanchez v. County of Sacramento*, 2020 WL

10 1984174, at *3 (E.D. Cal. Apr. 27, 2020) ("As the parties are aware, before

11 bringing a motion to compel production, the movant must show that she conferred,

12 or made a good faith effort to confer, with the party opposing disclosure before

13 seeking court intervention. The burden of ensuring that proper meet and confer

14 discussions take place is on the moving party." (internal citation omitted)); *Rogers*

15 *v. Giurbino*, 288 F.R.D. 469, 477 (S.D. Cal. 2012) ("A court can deny a motion to

16 compel solely because of a party's failure to meet and confer prior to filing the

17 motion.").

18     Moreover, Marvel tellingly and improperly omitted nearly all of the

19 correspondences the Ricos sent to Marvel concerning the parties' meet-and-confer

20 discussions. Marvel even omitted the Ricos' letters cited in Marvel's own letters.

21 *See e.g.*, Lens Decl. Ex. 3 at 1 (Marvel's counsel: "We write to follow up on your

22 August 8 letter."). While excluding nearly all of the Ricos' letters, Marvel attached

23 its August 12, 2022 letter twice. *See Id*. Exs. 3, 17. Marvel further cited a letter sent

24 by the defendants in the Eastern District of New York case, having nothing to do

25 with Marvel's Motion here. *See Id*. Ex. 12.[11]  To correct Marvel's omissions, the

26

---

27 [11] In stark contrast, the Ricos' motion to compel included all correspondence, from

28 both sides, concerning the issues raised in their motion, as is the norm. Dkt. 38-11 – 38-26.

1  Ricos are attaching Exhibits 30-36, and 42—the eight conferral letters from the
2  Ricos knowingly left out by Marvel.

3      ### D.      Marvel's Motion was Brought in Bad Faith

4       Marvel's gratuitous Motion was brought in bad faith to retaliate against the
5  Ricos. Marvel's bad faith is evident in several ways. *First*, Marvel brought its
6  unnecessary Motion immediately after the Ricos brought their merited one. The
7  Ricos' motion to compel—which was brought on similar grounds as the one granted
8  by Judge Kaplan in favor of the defendants in the three Southern District of New
9  York cases (Parkkinen Decl. Ex. 25)—was brought only after Marvel made clear that
10 it would not be producing the documents the Ricos had requested and asked for on
11 numerous occasions in the parties' meet-and-confer sessions. Marvel merely brought
12 its Motion as a deflective counterweight to the Ricos' motion.

13      *Second*, Marvel did not meet and confer regarding many of the issues it raised
14 in its Motion. Marvel, to fabricate a pretext to get in front of this Court and attack the
15 Ricos' credibility, strained to manufacture issues where none had even been raised
16 by it. Marvel's gymnastics are all done in an effort to turn the Ricos' merited motion
17 to compel into a mudslinging game of he-said-she-said with the goal of confusing the
18 Court. Indeed, Marvel tellingly plans to make an *ex parte* application to continue the
19 hearing date on the *Ricos'* motion to compel so as to be heard on the same date as
20 Marvel's counterweight Motion. Parkkinen Decl. Ex. 41. This Court should neither
21 indulge nor reward Marvel's gamesmanship.

22      *Third*, after Marvel served the Ricos with its portion of the Joint Stipulation,
23 the Ricos immediately reached out to Marvel in good faith and offered to resolve
24 each of the easily resolvable items (e.g., Facebook PDFs, basic Copyright Office
25 communications) Marvel raised (many for the first time) in its Motion. Parkkinen
26 Decl. Ex. 26 at 1. Marvel waited a full week to respond (a considerable amount of
27 time given that the Ricos freely offered Marvel all of the relief it sought). *Id*. Ex 26
28 at 5-6. Furthermore, Marvel only responded after being prompted several times by

1    the Ricos' counsel to do so. *Id*. When Marvel finally responded, it did so with

2    deflective hyperbole and a shoulder shrug, choosing instead to harass the Ricos and

3    burden this Court, with decidedly minor matters that have been rendered moot. *Id*.

4    Marvel is obviously playing games at the expense of the Ricos' and this Court's time

5    and resources. This Court should simply deny Marvel's makeweight Motion.

6    **E.      Marvel's Motion Should be Denied on the Merits as Based Solely on**

7    **Loose Speculation**

8         Marvel's Motion should be denied on the merits because it is based on

9    guesswork and unsubstantiated accusations concerning which documents the Ricos

10   *might* have. Indeed, Marvel's Motion contains demonstrable falsehoods designed to

11   mislead this Court. But, as Marvel knows, its Motion has no basis and far more than

12   runaway speculation is required to bring such a motion.

13        In cases, where, as here, a responding party represents that it does not have

14   further responsive information, "[t]he burden is on the party seeking to compel

15   discovery to cast doubt on the responding party's assertion that it does not have the

16   requested information." *Gary Friedrich Enters. v. Marvel Enters.*, 2011 WL

17   2623458, at *1 (S.D.N.Y. June 21, 2011); *see also Bagdasaryan v. City of Los

18   Angeles*, 2017 WL 10560536, at *7 (C.D. Cal. Nov. 1, 2017) (Scott, J.) ("[T]he

19   moving party must have a colorable basis for its belief that relevant, responsive

20   documents exist and are being improperly withheld."). "Mere suspicion" is not

21   enough. *Bagdasaryan*, 2017 WL 10560536, at *7. In fact, "even an informed

22   suspicion that additional non-privileged documents exist . . . cannot alone support

23   an order compelling production of documents." *Kinetic Concepts, Inc. v. ConvaTec

24   Inc.*, 268 F.R.D. 226, 252 (M.D.N.C. 2010). To bear its burden, the moving party

25   must be able to concretely articulate—with support—why there is reason to believe

26   that responsive documents exist. *See Bal Seal Eng'g, Inc. v. Nelson Prod., Inc.*,

27   2018 WL 6258879, at *2 (C.D. Cal. July 9, 2018) (affirming Magistrate Judge

28   Scott's denial of request to compel because the requesting party "had not 'provided

any concrete evidence that [producing party] withheld relevant [] documents'"").

Marvel is well aware that such speculation is insufficient to support a motion to

compel as it previously purported to lecture the Ricos on the subject. Dkt. 38 §

IV(B)(2).

### 1.    *The Ricos have Diligently Searched for Relevant Documents.*

As an initial matter, the Ricos agreed in good faith in their responses to every

one of Marvel's RFPs that notwithstanding their objections, they would produce all

non-privileged documents in their possession, custody or control found through a

reasonably diligent search. Lens Decl. Ex. 21. In telling contrast to Marvel's

responses to the Ricos' RFPs there is no indicia of obfuscation or evasion in the

Ricos' responses. *Compare Id*. Ex. 21 *with* Parkkinen Decl. Ex. 38.

The Ricos' searches for physical and/or electronic copies of relevant and

responsive documents have been extensive. Since the time the Ricos expected to

exercise their statutory termination rights in the Works, they began searching for

and collecting documents which might be relevant to such termination. Lens Decl.

Ex. 14 at B. Rico Resp. at10, M. Hart-Rico Resp. at 10. When the Ricos received

Marvel's RFPs, their search efforts continued. Lens Decl. Ex. 14 at B. Rico Resp.

at14-15, M. Hart-Rico Resp. at 14-15. The Ricos have informed Marvel, numerous

times, that their production of documents would be substantially completed on or

before August 29, 2022. Parkkinen Decl. Ex. 37 at 1-2, Ex. 26 at 1; Lens Decl. Ex.

4 at 4.

The Ricos' searches have been diligent and thorough. Specifically, Michele

Hart-Rico searched her apartment, including the filing cabinet in her apartment, her

personal computer, and searched her small offsite storage room in North

Hollywood, California in order to locate relevant, responsive documents, and both

detailed and swore to her diligent efforts in her responses to Marvel's

interrogatories on the subject. Lens Decl. Ex. 14 M. Hart-Rico Resp. at 15. Buz

Rico likewise searched his computer files, his entire house, including his files in his

four-drawer filing cabinet, all shelves, closets, drawers, his home office, and his
garage. *Id.* Ex. 14 B. Rico Resp. at 15. In addition, and notwithstanding the parties'
agreement that such public sources need not be searched and that such third parties
need not be contacted, the Ricos, with the participation of their counsel, contacted
David Currie, Sean Howe, the Los Angeles Public Library, the New York Public
Library, the Cambria County Library, and conducted numerous searches online,
including sites such as Google, Facebook, Amazon, and eBay. *Id.* Ex. 14 B. Rico
Resp. at 15, M. Hart-Rico Resp. at 15.  All told, given that the Creation Period was
sixty years ago, that Don Rico has been deceased for four of those decades, that the
Ricos are just individuals without sophisticated document retention platforms, the
Ricos were still able to make a considerable production of responsive documents.

Downplaying the Ricos' substantial production, Marvel strains to
manufacture inferences that the Ricos' efforts are somehow deficient by
intentionally conflating the different defendants. Specifically, Marvel's Motion
cited its responses to Nanci Solo's Second Set of Interrogatories—which Solo had
propounded in the Eastern District of New York—to boast about Marvel's
purported search efforts and to fabricate inferences of alleged deficiencies by the
Ricos. Lens Decl. Ex. 23. Marvel's citation to these interrogatories is problematic
for several reasons.

*First*, Marvel went out of its way in its responses to Solo's Interrogatories to
object to the use of those responses in any case other than the *Solo* case. Lens Decl.
Ex. 23 at 12 ("MCI further objects to this Interrogatory to the extent that any of the
defendants, who are all represented by the same counsel-of-record, attempt to use it
in any of the other pending cases.").) Yet, Marvel has no issue citing those "off
limit" interrogatory responses here.

*Second*, Marvel alleges that the Ricos have not produced all responsive
documents. As support for this innuendo, Marvel cites the Ricos' interrogatory
responses because those answers did not state that the Ricos had produced all

responsive documents. *See* Section III(B), *supra*. What Marvel does not tell the Court is that Marvel's interrogatories *did not ask* if the Ricos had produced all responsive documents. *See e.g.*, Lens Decl. Ex. 14 M. Hart-Rico Resp. at 14 ("Describe Your efforts to identify, obtain and/or collect Documents responsive to MCI's Requests for Production."). Marvel cannot fabricate an inference from the answer to a question that the Ricos were never asked.

The Ricos have conducted reasonably diligent searches for relevant, responsive documents. Lens Decl. Ex. 14 B. Rico Resp. at 14-15, M. Hart-Rico Resp. at 14-15. Subject to their right and obligation to supplement them, the Ricos productions were substantially completed by August 29, 2022, as projected by them. Parkkinen Decl. Ex. 37 at 1-2, Ex. 26 at 1; Lens Decl. Ex. 4 at 4. It is axiomatic that the Ricos cannot produce, nor be compelled to produce documents that are not within their possession, custody or control. *Sidman v. Concord Arena Parking, LLC*, 2021 WL 1940255, at *3 (E.D.N.Y. May 11, 2021) (Where a party "assert[s] that they have produced all responsive documents . . . and the adversary believes the production is incomplete, the remedy is not to pound the table and ask the Court to order additional production."). Rather, "[i]n the absence of evidence to the contrary, [a party] is required to accept [the adversary's] response to this request that, despite a diligent search, no responsive documents exist." *Sanchez*, 2020 WL 1984174, at *4. Marvel's guesswork is unsubstantiated and its speculation is tethered to nothing more than its hope to distract this Court. As this is a wholly insufficient basis for a motion to compel, Marvel's Motion must be denied. *See Bagdasaryan*, 2017 WL 10560536, at *7.

### 2. *The Ricos do not have Possession, Custody, or Control of David Currie's Documents.*

Marvel's position regarding David Currie's ("Currie") documents is preposterous. Its Motion has no basis because as Marvel knows, the Ricos have nothing whatsoever to do with Currie, and there is no reason to believe otherwise.

1   Moreover, to the extent Currie was even relevant to the Ricos, which is doubtful,

2   the Motion is moot, as Marvel has repeatedly been informed that Currie, on his own

3   accord, has agreed to cooperate and to produce requested documents. Parkkinen

4   Decl. Ex. 37 at 1-2.

5          As background, Currie is a third party to each of the five Marvel termination

6   cases. He is merely a comic book fan and has no relation to the Ricos. Currie, who

7   wrote a book, <u>ditko shrugged</u>, about the late Steve Ditko (the creator or co-creator

8   of Spider-Man and Doctor Strange, which are among the works involved in the

9   *Ditko* litigation), had corresponded with Steve Ditko prior to his death and,

10  thereafter, exchanged a few emails with his nephew, Mark Ditko. Marvel could

11  have readily chosen to subpoena Currie's related documents but chose not to.

12  During the parties' meet-and-confer discussions in the *Ditko* case, Marvel took the

13  position that Patrick Ditko, the defendant in the *Ditko* case, was obligated to obtain

14  documents from Currie even though he was an unrelated third party. *See e.g.*, Lens

15  Decl. Ex. 3 at 2 (arguing "the Ditko family—not Marvel— had and has an

16  obligation to obtain Currie's files form him.").

17         Currie never corresponded with the Ricos and did not feature Don Rico nor

18  Don Rico's Works in his book about Steve Ditko. Currie is a third party to this

19  litigation and a complete stranger to the Ricos. Notwithstanding this, Marvel, in its

20  attempt to manufacture inferences of the Ricos' alleged discovery improprieties and

21  get in front of this Court—for the first time in its Motion, projects the dubious

22  obligation it attributed to Patrick Ditko on to the Ricos. *See* Lens Decl. Ex. 3 at 2.

23  Worse, Marvel has knowingly misled the Court in its attempt to create such an

24  inference. *See e.g.*, Section III(B), *supra* ("defendants (across the pending cases)

25  were the ones corresponding with Currie and providing him with highly relevant

26  information."). To be clear, even Mark Ditko, who corresponded with Currie, is not

27  a defendant in any of the termination actions. Yet, for its own convenience, Marvel

28  paints over any distinction between parties and non-parties, and between distinct

parties to the different litigations, in different jurisdictions and Circuits. Marvel should be sanctioned for its intentionally misleading statements.

Further still, Marvel's Motion concerning Currie's documents should be denied for the following additional reasons:

*First*, Marvel's RFP No. 35, which it cites as the basis for its Motion, did not request Currie's documents. Lens Decl. Ex. 21 at 43 ("All Communications with any of the parties to the following actions: *Marvel Characters, Inc. v. Ditko*, No. 1:21-cv-07957-LAK (S.D.N.Y.); *Marvel Characters, Inc. v. Dettwiler*, No. 1:21-cv-07959-LAK (S.D.N.Y.); *Marvel Characters, Inc. v. Lieber*, No. 1:21-cv-07955-LAK (S.D.N.Y.); and *Marvel Characters, Inc. v. Solo*, No. 1:21-cv-5316-DG-TAM (E.D.N.Y.)."). The Ricos have never corresponded with Currie and Currie is not a party to any of the cited actions, nor any action concerning Marvel, for that matter. This, alone, is sufficient reason to deny Marvel's Motion.

*Second*, Currie's communications with Steve Ditko, who is famous for creating or co-creating *Spider-Man* and *Doctor Strange*, are irrelevant and have nothing to do with Don Rico or his Works.

*Third*, the Ricos obviously do not and would not have possession, custody, or control of Currie's communications with Steve Ditko or Mark Ditko. A party has "control" of a document if it "has the legal right to obtain [it] from third parties." *SEC v. Premier Holding Corp.*, 2021 U.S. Dist. LEXIS 246096, at *13 (C.D. Cal. Sep. 7, 2021) (Scott, J.). The Ricos do not, and Marvel has not alleged otherwise, have any right, let alone a *legal right*, to obtain documents which are possessed and owned by Currie.

*Fourth*, Currie is a third party to this litigation and a stranger to the Ricos. Thus, Marvel and the Ricos were on equal footing and if Marvel wanted documents from Currie, it could have readily subpoenaed them. Instead, Marvel pressured the defendant in the *Ditko* case to do the work for it. *See e.g.*, Lens Decl. Ex. 10 at 4, Ex. 15 at 3. Patrick Ditko's counsel (also counsel of record in this case), in a good

faith effort to obtain all available information, reached out to Currie to see if he would be willing to produce potentially relevant documents. *Id*. Ex. 15 at 3. Several weeks after that, counsel for Marvel reached out to him as well, and intrusively suggested that Marvel should send someone to Currie's home to copy documents. Parkkinen Decl. Ex. 39 at 1. Alarmed, Currie then retained defendants' counsel to assist him, and agreed to produce relevant documents in his possession. To that end, defendants' counsel then informed Marvel that any future correspondence should be directed to them, and informed Marvel that Currie has agreed to produce relevant documents in his possession. Lens Decl. Ex. 18; Parkkinen Decl. Ex. 26 at 1. The Ricos do not have possession, custody, or control over Currie's documents and, as Marvel knows this non-issue is, in any event, moot. For all of the above reasons, Marvel's Motion should be denied.

### 3. *The Ricos do not have Possession, Custody, or Control of the Kirbys' Documents; the Kirbys are Producing Them.*

Similarly, the Ricos do not have possession, custody, or control of documents belonging to Susan, Barbara, Neal, or Lisa Kirby (collectively, the "Kirbys") from the *Kirby* case. Marvel again conflates parties and non-parties, lumping everyone with the same counsel together in an inappropriate bid to short cut the Federal Rules Civil Procedure. Simply because the Ricos have the same counsel that the Kirbys had years ago, does not mean that documents belonging to the Kirbys now belong to the Ricos. The Ricos made this point clear from the beginning. Parkkinen Decl. Ex. 40 at 28. ("As far as the Kirby documents are concerned, these obviously belong to the Kirbys who are not parties. The Kirbys' documents may be obtained through appropriate third-party discovery, however, both Marvel and Weil, Gotshal (Marvel's counsel in the Kirby case) are already in possession of all these documents."). In response, Marvel agreed to follow proper procedure and sent each of the four Kirbys a subpoena requesting the documents from the *Kirby* case. The Kirbys then produced more than 4,000 pages from the *Kirby* case, notwithstanding

that the case has not been active for nearly a decade.  The Ricos also made reasonably diligent searches for documents relating to the *Kirby* case, but unsurprisingly have no such responsive documents.

Moreover, per the agreement of the parties—i.e., Marvel would produce all Kirby documents in its possession or control, then the Kirbys and defendants would produce any such documents in their possession which Marvel had not already produced—the Kirbys are in the process of reviewing their files and will produce responsive, non-duplicative documents. Lens Decl. Ex. 9 at 1. As Marvel is aware, the Kirbys committed to substantially complete this production by August 29, 2022 and have done so, further mooting this Motion. Parkkinen Decl. Ex. 37 at 1-2, Ex. 26 at 1; Lens Decl. Ex. 4 at 4.

**4.**    ***Marvel did not Meet and Confer Regarding Communications with the Copyright Office, which the Ricos Already Produced.***

As previously stated, Marvel did not meet and confer regarding the production of the Ricos' termination notices (already in Marvel's possession) and pro forma communications with the Copyright Office with respect thereto. *See* Section IV(C), *supra*. Marvel raised the topic for the first time in its Motion and this alone, is reason enough to deny Marvel's Motion. *Rogers v. Giurbino*, 288 F.R.D. 469, 477 (S.D. Cal. 2012). In addition, this Court should deny Marvel's Motion because the Ricos have in fact produced their termination notices and communications with the Copyright Office mooting the Motion. Indeed, Marvel's receipt of the Ricos' termination notices is what inspired Marvel to file suit in the first place. Complaint ¶¶ 17-19. Marvel further ignores that the Ricos attached their termination notices as Exhibit A to their Answer & Counterclaim. Counterclaim Ex. A (Dkt. 22-1). The Ricos also produced their correspondence with the

Copyright Office by August 29, 2022, as promised. *See* RICO-0127–RICO-0135. Accordingly, Marvel's Motion is moot and should be denied on that basis as well.

**5.      *There are No Documents Associated with Buz Rico's Website or Facebook Page.***

As previously stated, Marvel never raised the issue of Buz Rico's Facebook page during any of the parties' meet-and-confer discussions. But, had it done so, the Ricos would have explained, as they did repeatedly for Buz Rico's website, that there are no relevant documents associated with either site. Lens Decl. Ex 15 at 3 ("As for Buz Rico's website, no documents (only images copied from the internet) were associated with that site."). These simple websites—which Buz Rico hosted in remembrance of his late father, Don Rico, and his wide-ranging contributions to the world of art—were small personal projects comprised of various copy-and-pasted bits of information Buz Rico found elsewhere online. Parkkinen Decl. Ex. 26 at 1. Buz Rico has repeatedly verified in his interrogatory responses that he has diligently searched, among other places, his computer for any documents responsive to Marvel's RFPs (Lens Decl. Ex. 14 at 4) and that there are no relevant documents associated with either site, other than the site themselves. Parkkinen Decl. Ex. 26 at 1; Lens Decl. Ex 15 at 3. It was only *after* Marvel served its Motion that it then requested copies of the websites themselves, notwithstanding that Marvel already had full access to sites. *See* Lens Decl. Exs. 11, 19. And, once again, the Ricos, in a good faith attempt to resolve all issues without burdening this Court, agreed to produce, and thereafter produced copies of the websites, notwithstanding that these public internet sites were readily accessible by Marvel. Parkkinen Decl. Ex. 26 at 6.

Again, there are no relevant documents in the Ricos' possession or control regarding Buz Rico's old website or Facebook page, and Marvel has not carried its burden to show otherwise. *Gary Friedrich Enters.*, 2011 WL 2623458, at *1; *see also Bagdasaryan*, 2017 WL 10560536, at *7 ("[T]he moving party must have a

1  colorable basis for its belief that relevant, responsive documents exist and are being

2  improperly withheld.").

3     To manufacture suspicion, Marvel has assumed that, because Buz Rico's

4  website requested that visitors send in scanned copies of Don Rico's artwork, that (i)

5  anyone actually did so, and (ii) that any such artwork is remotely relevant to the *two*

6  Works at issue in this case. Marvel assumes too much, and has provided no support

7  for either speculation. In any event, Buz Rico has verified that he has diligently

8  searched his computer files for responsive documents and has informed Marvel, on

9  numerous occasions, that there are no responsive documents associated with the

10  website or Facebook page. Lens Decl. Ex. 14 at 15, Ex. 15 at 3; Parkkinen Decl. Ex.

11  26 at 1.

12     Marvel next tries to manufacture an inference of impropriety from the

13  website's quoting of Mark Evanier, stating: "[Don] Rico told me he used the pen

14  names because he was writing novels at the time and didn't want his publisher to

15  know . . ." Lens Decl. Ex. 19 at 2. Marvel's wishful inference assumes that this

16  anecdotal statement by Don Rico to Evanier was written, rather than oral, and further

17  assumes that, even if it were written, that Don Rico and thereafter, the Ricos, would

18  possess this correspondence, rather than the much more likely scenario that a letter

19  sent to Mark Evanier by Don Rico, *if any and if retained*, would be in Mr. Evanier's

20  possession. Again, Marvel provides no support for its incongruent assumptions.

21     Buz Rico has unequivocally and repeatedly affirmed that he does not have

22  any responsive documents associated with the website or Facebook page. Marvel's

23  support for its position amounts to mere guesswork. Such speculation does not

24  provide a sufficient basis to compel the Ricos to produce documents they do not

25  have and which may not exist. *Carter v. Dawson*, 2010 WL 4483814, at *5 (E.D.

26  Cal. Nov. 1, 2010) (defendants' assertion that they are unable to locate responsive

27  documents does not provide a ground for granting a motion to compel "unless

28  Plaintiff can identify a specific document that Defendants have withheld"); *Ayala v.*

*Tapia*, 1991 WL 241873, at *2 (D.D.C. Nov. 1, 1991) (denying motion to compel where moving party could not identify documents that were withheld); *In re Lorazepam & Clorazepate Antitrust Litig.*, 219 F.R.D. 12, 17 (D.D.C. 2003) ("The federal courts are often confronted with a party's complaint that its opponent must have documents that it claims not to have. Such suspicion is, however, insufficient to warrant granting a motion to compel."). Accordingly, Marvel's Motion should be denied.

## F.     Marvel Should be Sanctioned for Its Frivolous Motion

"If [a] motion [to compel] is denied, the court . . . must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees [unless] the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B).

Here, sanctions awarding the Ricos their attorney's fees in preparing their portion of the Joint Stipulation, pursuant to Federal Rule of Civil Procedure 37(a)(5)(B), are more than appropriate because Marvel's Motion lacks substantial justification, was solely brought to serve as a counterweight to the Ricos' substantive motion to compel, and in any event, the exaggerated issues in Marvel's Motion were mooted by the Ricos' August 18, 2022 offer. Parkkinen Decl. Ex. 26 at 1.

"There is no bright line standard for 'substantial justification'[.]" *Trujillo v. Princess Cruise Lines*, 2021 U.S. Dist. LEXIS 156697, at *43 (C.D. Cal. Apr. 23, 2021), quoting *Brown v. State of Iowa*, 152 F.R.D. 168, 173 (S.D. Iowa 1993). In determining whether there is substantial justification, "[c]ourts have generally focused on the quality of the justification and the genuineness of the dispute[.]" *Id.* (internal citations and quotations omitted). Here, as demonstrated above, there is no genuine dispute between the parties. After the Ricos received Marvel's portion of the Joint Stipulation, they reached out offering to resolve the few action-items Marvel

raised in its Motion. Parkkinen Decl. Ex. 26 at 1. Marvel, first tellingly ignored the Ricos' good faith offer and then, only when prompted by the Ricos to respond, refused (without justification), failed to provide any counter-proposal, and steamrolled ahead with its moot makeweight Motion. *Id*. Ex. 26 at 5-6. Marvel should further be sanctioned because it did not meet and confer on issues raised in its Motion. *See Monster Energy Co. v. Vital Pharm.*, 2021 U.S. Dist. LEXIS 205554, at *16 (C.D. Cal. Oct. 12, 2021) (awarding attorney's fees and finding motion to compel not "substantially justified" when movant failed to properly meet and confer).

Further still, Marvel and its counsel should be sanctioned for intentionally seeking to mislead the Court in their Motion by willful misrepresentations and the forging of knowingly false inferences. 28 U.S.C. § 1927 ("Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."); *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010) ("A "finding that the attorney recklessly or intentionally misled the court is sufficient to impose sanctions under [28 U.S.C.] § 1927, and a finding that the attorneys recklessly raised a frivolous argument which resulted in the multiplication of the proceedings is also sufficient to impose sanctions under § 1927."); *Robinson v. The Chefs' Warehouse*, 2017 U.S. Dist. LEXIS 93339, at *17-18 (N.D. Cal. June 16, 2017). The misrepresentations outlined above, particularly the most blatant ones concerning Currie, served as a knowingly false basis to misdirect the Court's attention away from Marvel's own discovery failures (which led to Judge Kaplan's Order in the S.D.N.Y. cases and the Ricos' motion to compel herein). Such gamesmanship should not be tolerated by the Court or encouraged by a failure to hold Marvel and its counsel accountable.

The Ricos seek to recover attorney's fees incurred in opposing Marvel's Motion in the amount of $7,500, which is considerably less than the attorney

time/fees expended on this completely unnecessary Motion. The Ricos shall provide support for their fee request as requested by Court.

## V.     **MCI'S CONCLUSION**

For the foregoing reasons, MCI respectfully requests an order compelling Defendants to, within seven days, (a) produce all non-privileged documents that are responsive to MCI's RFPs; and (b) amend their interrogatory responses to confirm that all non-privileged, responsive documents have been produced.

## VI.    **THE RICOS' CONCLUSION**

Marvel's unjustified Motion is nothing more than a retaliatory attempt to misdirect and distract the Court from *Marvel's* serious discovery deficiencies which are before the Court on the Ricos' motion to compel. Dkts. 37-38. Marvel's makeweight Motion is falsely premised, moot, and must further be denied because Marvel failed to meet and confer regarding issues raised for the first time therein. For all of these reasons, the Ricos respectfully request that this Court *deny* Marvel's Motion in its entirety. The Ricos further request sanctions in the form of attorney's fees incurred in opposing Marvel's demonstrably frivolous Motion.

Dated:      August 30, 2022              **O'MELVENY & MYERS LLP**


                                         By: */s/ Daniel M. Petrocelli*
                                         _____
                                                   Daniel M. Petrocelli

                                         Daniel M. Petrocelli
                                         dpetrocelli@omm.com
                                         Molly M. Lens
                                         mlens@omm.com
                                         Danielle Feuer
                                         dfeuer@omm.com
                                         1999 Avenue of the Stars, 8th Floor
                                         Los Angeles, California 90067
                                         Telephone:  (310) 553-6700
                                         Facsimile:  (310) 246-6779

                                         Allen Burton (admitted *pro hac vice*)
                                         aburton@omm.com
                                         Times Square Tower
                                         7 Times Square
                                         New York, NY 10036
                                         Telephone:  (212) 326-2000
                                         Facsimile:  (212) 326-2061

                                         Kendall Turner
                                         kendallturner@omm.com
                                         1625 Eye Street NW
                                         Washington, DC 20006
                                         Telephone:  (202) 383-5300
                                         Facsimile:  (202) 383-5414

                                         *Attorneys for Marvel Characters, Inc.*

Dated:     August 30, 2022                    **TOBEROFF & ASSOCIATES, P.C.**


By:  */s/ Marc Toberoff*
                    Marc Toberoff

Marc Toberoff
mtoberoff@toberoffandassociates.com
23823 Malibu Road, Suite 50-363
Malibu, CA 90265

*Attorneys for Michele Hart-Rico and*
*Buz Donato F. Rico III, heirs of*
*Donato Francisco Rico II*

- 38 -

1      Pursuant to Local Rule 5-4.3.4(a)(2)(i), the filer attests that all other

2 signatories listed, and on whose behalf the filing is submitted, concur in the filing's

3 content and have authorized the filing.

4

5 Dated:     August 30, 2022      **O'MELVENY & MYERS LLP**

6

7                     By: */s/ Daniel M. Petrocelli*

8                        Daniel M. Petrocelli

9               *Attorneys for Marvel Characters, Inc.*

\- 39 -