# EXHIBIT 8

**O'Melveny**

O'Melveny & Myers LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067-6035

T: +1 310 553 6700
F: +1 310 246 6779
omm.com

File Number: 0903423-00392

May 11, 2022

Molly M. Lens
D: +1 310 246 8593
mlens@omm.com

Marc Toberoff
Jaymie Parkkinen
Toberoff & Associates
23823 Malibu Road, Suite 50-363
Malibu, California 90265

Re:   *Marvel Characters, Inc. v. Lieber*, No. 1:21-cv-07955-LAK; *Marvel Characters, Inc. v. Ditko*, No. 1:21-cv-07957-LAK; *Marvel Characters, Inc. v. Dettwiler*, No. 1:21-cv-07959-LAK; *Marvel Characters, Inc. v. Solo*, No. 1:21-cv-5316-DG-TAM; and *Marvel Characters, Inc. v. Rico*, No. 2:21-cv-07624-DMG-KES

Dear Marc and Jaymie:

We write concerning defendants' responses—both present and forthcoming—to the Requests for Production ("RFPs") by Marvel Characters, Inc. ("MCI"). With the exception of Larry Lieber, defendants claim ownership of their statutory predecessors' termination interests. In short, their claims flow from the alleged rights of another: Patrick Ditko of Stephen Ditko ("Steve Ditko"); Keith Dettwiler of Donald Heck ("Don Heck"); Nanci Solo and Erik Colan of Eugene Colan ("Gene Colan"); and Michele Hart-Rico and Buz Donato F. Rico III ("Buz Rico") of Donato Francisco Rico II ("Don Rico").

We thus write to confirm that defendants are searching *both* their files *and* those of the deceased contributors for responsive documents. As you know, your clients are required to produce documents over which they have control, with control measured by whether they have "*either* the legal right or the practical ability to obtain [the] materials." *GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 355 (S.D.N.Y. 2012), *aff'd*, 2012 WL 1849101 (S.D.N.Y. May 21, 2012). For avoidance of doubt, Instruction No. 4 of MCI's RFPs expressly detailed this obligation.[1]

MCI construes defendants' commitment in General Objection No. 15—wherein defendants confirmed their agreement to "conduct a reasonable search of custodians reasonably likely to have non-cumulative, non-privileged responsive Documents"—as confirmation of their recognition of this obligation. In an abundance of caution, however, MCI asks that defendants

---

[1] Instruction No. 4 states as follows: "You are instructed to produce all Documents that are responsive to these Requests and that are in Your possession, custody, or control. A Document is in Your 'possession, custody, or control' if it is in Your physical possession, or if, as a practical and legal matter, You have the ability, upon request, to obtain possession of the Document or a copy thereof from another Person that has physical possession of the Document."



provide the more explicit confirmation requested herein.  Relatedly, MCI seeks confirmation that the deceased contributors' documents have been preserved and, if not, what files have been lost and when.  Accordingly, MCI requires answers to the following inquiries:

**Steve Ditko**

- Confirm that Patrick Ditko does not contend that there are any of Steve Ditko's Documents[2] that are outside of Patrick's Ditko's possession, custody, or control such that Patrick Ditko does not intend to review such files that are reasonably likely to contain responsive information for purposes of responding to MCI's RFPs.
- Identify the current custodian(s) of Steve Ditko's Documents, including but not limited to:
    1. Documents Concerning interviews Concerning Steve Ditko, the Works, or Marvel;
    2. Communications with any Authors, bloggers, reporters, publishers, fans, and/or other third parties Concerning the Works, Marvel, or Steve Ditko, Including Danny Fingeroth and David Currie;
    3. Documents that state, memorialize, reflect, or Concern any Agreements between Steve Ditko and Marvel;
    4. Documents Concerning compensation or payment for work Steve Ditko performed for Marvel and/or pursuant to the foregoing Agreements; and
    5. Documents Concerning Steve Ditko's work for Marvel from 1955 to 1985.
- Confirm that, as the administrator of Steve Ditko's estate, Patrick Ditko has taken steps to preserve all potentially relevant Documents to the issue whether Steve Ditko's work for Marvel was done on a work-made-for-hire basis.  Relatedly, identify the steps taken and explain when Patrick Ditko first took such steps.
- Identify any of Steve Ditko's Documents that Patrick Ditko contends have been lost or destroyed, how and why such Documents were lost or destroyed, and when.

**Don Heck**

- Confirm that Keith Dettwiler does not contend that there are any of Don Heck's Documents that are outside of Keith Dettwiler's possession, custody, or control such that Keith Dettwiler does not intend to review such files that are reasonably likely to contain responsive information for purposes of responding to MCI's RFPs.
- Identify the current custodian(s) of Don Heck's Documents, including but not limited to:
    1. Documents Concerning interviews Concerning Don Heck, the Works, or Marvel;

---

[2] As used in this letter, "Documents" has the same meaning as that defined in MCI's RFPs.  In addition, to the extent that the answers differ in this letter by type of Documents—for example, hard copy or Electronically Stored Information ("ESI"), including email—please ensure all such differences are clearly identified in your response.

- 2. Communications with any Authors, bloggers, reporters, publishers, fans, and/or other third parties Concerning the Works, Marvel, or Don Heck, Including Danny Fingeroth and David Currie;

- 3. Documents that state, memorialize, reflect, or Concern any Agreements between Don Heck and Marvel;

- 4. Documents Concerning compensation or payment for work Don Heck performed for Marvel and/or pursuant to the foregoing Agreements; and

- 5. Documents Concerning Don Heck's work for Marvel from 1955 to 1985.

- Confirm that, as the executor of Don Heck's estate, Keith Dettwiler has taken steps to preserve all potentially relevant Documents to the issue whether Don Heck's work for Marvel was done on a work-made-for-hire basis. Relatedly, identify the steps taken and explain when Keith Dettwiler first took such steps.

- Identify any of Don Heck's Documents that Keith Dettwiler contends have been lost or destroyed, how and why such Documents were lost or destroyed, and when.

**Gene Colan**

- Confirm that Nanci Solo and Erik Colan (together, the "Colan Heirs")[3] do not contend that there are any of Gene Colan's Documents that are outside of the Colan Heirs' possession, custody, or control such that the Colan Heirs do not intend to review such files that are reasonably likely to contain responsive information for purposes of responding to MCI's RFPs.

- Identify the current custodian(s) of Gene Colan's Documents, including but not limited to:

    - 1. Documents Concerning interviews Concerning Gene Colan, the Works, or Marvel;

    - 2. Communications with any Authors, bloggers, reporters, publishers, fans, and/or other third parties Concerning the Works, Marvel, or Gene Colan, Including Danny Fingeroth and David Currie;

    - 3. Documents that state, memorialize, reflect, or Concern any Agreements between Gene Colan and Marvel;

    - 4. Documents Concerning compensation or payment for work Gene Colan performed for Marvel and/or pursuant to the foregoing Agreements; and

    - 5. Documents Concerning Gene Colan's work for Marvel from 1955 to 1985.

- Confirm that, as the heirs of Gene Colan (and whose purported rights flow from Gene Colan), the Colan Heirs have taken steps to preserve all potentially relevant Documents to the issue whether Gene Colan's work for Marvel was done on a work-made-for-hire basis. Relatedly, identify the steps taken and explain when the Colan Heirs, individually and collectively, first took such steps.

---

[3] To any extent the answer(s) to these inquiries differ as to Nanci Solo and Erik Colan, please provide separate responses for each defendant.

- Identify any of Gene Colan's Documents that the Colan Heirs contend have been lost or destroyed, how and why such Documents were lost or destroyed, and when.

**Don Rico**

- Confirm that Michele Hart-Rico and Buz Rico (together, the "Rico Heirs")[4] do not contend that there are any of Don Rico's Documents that are outside of the Rico Heirs' possession, custody, or control such that the Rico Heirs do not intend to review such files that are reasonably likely to contain responsive information for purposes of responding to MCI's RFPs.

- Identify the current custodian(s) of Don Rico's Documents, including but not limited to:

    1. Documents Concerning interviews Concerning Don Rico, the Works, or Marvel;
    2. Communications with any Authors, bloggers, reporters, publishers, fans, and/or other third parties Concerning the Works, Marvel, or Don Rico, Including Danny Fingeroth and David Currie;
    3. Documents that state, memorialize, reflect, or Concern any Agreements between Don Rico and Marvel;
    4. Documents Concerning compensation or payment for work Don Rico performed for Marvel and/or pursuant to the foregoing Agreements; and
    5. Documents Concerning Don Rico's work for Marvel from 1955 to 1985.

- Confirm that, as the heirs of Don Rico (and whose purported rights flow from Don Rico), the Rico Heirs have taken steps to preserve all potentially relevant Documents to the issue whether Don Rico's work for Marvel was done on a work-made-for-hire basis. Relatedly, identify the steps taken and explain when the Rico Heirs, individually and collectively, first took such steps.

- Identify any of Don Rico's Documents that the Rico Heirs contend have been lost or destroyed, how and why such Documents were lost or destroyed, and when.

\*   \*   \*

We request your written response within a week from today, i.e., on or before May 18, 2022.

Sincerely,

Molly M. Lens
Of O'Melveny & Myers LLP

---

[4] Again, to any extent the answer(s) to these inquiries differ as to Michele Hart-Rico and Buz Rico, please provide separate responses for each defendant.