# EXHIBIT 12

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

23823 MALIBU ROAD, SUITE 50-363
MALIBU, CALIFORNIA 90265

Tel: (310) 246-3333 / Fax: (310) 246-3101
jparkkinen@toberoffandassociates.com

March 22, 2022

Via Email

Molly M. Lens
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067

      RE:    *Marvel Characters, Inc. v. Solo*
              Case No. 1:21-cv-05316-DG-TAM
              Discovery Issues & Request for Conference Per L.R. 37.3

Dear Molly:

      We write in response to Marvel Character, Inc.'s ("Marvel") March 14, 2022 Responses and Objections to Nanci Solo and Erik Colan's First Requests for Production of Documents ("RFP"). We also request that the parties meet and confer by telephone conference to eliminate the necessity of bringing a motion to compel.

      First, as you know, the Federal Rules provide parties considerable leeway to conduct relevant discovery: "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance is construed broadly "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978); s*ee also Estee Lauder, Inc. v. Fragrance Counter, Inc.,* 189 F.R.D. 269, 274 (S.D.N.Y. 1999) ("It is well-settled within this Circuit that 'any possibility' that the sought-after information may be relevant to the subject-matter of the action will satisfy Rule 26(b)(1)'s requirements. . . .") (citations omitted).

      Despite these broad parameters, Defendants carefully crafted each of their RFPs to seek only information directly relevant and proportional to the needs of the case. Yet notwithstanding Defendants' specificity, Marvel served numerous improper objections and nonresponsive answers to the RFPs. Marvel's responses are deficient as follows:

**Marvel's Delinquent Production**

      We note that, to date, Marvel has only produced termination notices (already in Defendants' possession), some comic book pages, and copyright registrations and renewals for some of the works.

      Marvel ambiguously stated that it would release documents in its possession on a "rolling" basis,

**TOBEROFF & ASSOCIATES, P.C.**

March 22, 2022
Molly M. Lens
Page: 2

but gave no indication of why this is necessary or justified and provided no end date for that production. If a party must produce documents in stages, it must state a definite end date on which production will be complete. Under the 2015 revisions to the Federal Rules of Civil Procedure, responding parties must provide dates certain for document productions. *See* Fed. R. Civ. P. 34(b)(2)(B); 2015 Adv. Comm. Note to Rule 34 ("When it is necessary to make the production in stages the response should specify the beginning and end dates of the production."); *Fischer v. Forrest*, 2017 U.S. Dist. LEXIS 28102, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) ("responses [that] do not indicate when documents and ESI that defendants are producing will be produced" violates amended Rule 34). In addition, the producing party must justify its need to produce documents in stages. *See Connex R.R. LLC v. AXA Corporate Sols. Assurance*, 2017 U.S. Dist. LEXIS 215050, at *58-59 (C.D. Cal. Feb. 22, 2017) (permitting rolling production of documents when the producing party provided a declaration demonstrating sufficient need); *see also In re Zyprexa Prods. Liab. Litig.*, 2005 U.S. Dist. LEXIS 50414, at *1 (E.D.N.Y. Mar. 10, 2005) (approving rolling production for case involving more than 3 million documents and setting 90-day time limit to complete production).

As such, please provide Defendants with the reasons Marvel can only release responsive documents in stages, and a date certain on which Marvel will complete its release of documents responsive to Defendants' RFPs.

Additionally problematic are Marvel's repeated attempts to shortcut its discovery obligations and thereby impair Defendants' rights. Ignoring Defendants' explicit repeated objections, Marvel announced that it will produce only one agglomerated production across the five separate cases in which Marvel is a party, shifting Marvel's discovery duties onto the different defendants in those cases. As Marvel already knows, this is without legal basis and contrary to the Rules. "It is well-settled that a producing party cannot unilaterally shift the burden and expense of complying with its discovery obligations to its opponent by simply dumping large quantities of unrequested materials onto the discovering party along with the items actually sought." *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, 2019 U.S. Dist. LEXIS 166373, at *68 (S.D.N.Y. Sep. 26, 2019) (internal quotations omitted). By providing an agglomerated production pertaining to *five* different cases in different courts, Marvel improperly shifts the burden onto each defendant to sift through thousands of documents, only some of which are responsive to their RFPs and relevant to them. *Giordano v. Rizzo, DiGiacco, Hern & Baniewicz, CPAs, PLLC (In re Turkey Lake, LLC)*, 2021 Bankr. LEXIS 2504, at *20 (Bankr. N.D.N.Y. Sep. 14, 2021) ("A document dump which largely left the defendant with a mass of unmanageable and unusable documents does not comply with the spirit or letter of the Federal Rules of Civil Procedure.") (quoting *Novak v. Yale Univ.*, 2015 U.S. Dist. LEXIS 157067, at *8 (D. Conn. Nov. 20, 2015) (internal quotations omitted).

Furthermore, it is fundamental that Marvel "must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i); *see also City of Colton v. Am. Promotional Events, Inc.*, 277 F.R.D. 578, 582-84 (C.D. Cal. 2011) (producing electronically stored information as it is kept in usual course of business would require including basic identifying metadata fields such as file name, attachment range, folder title, and folder range; producing in TIFF or JPEG format would require labeling the documents to correspond to categories in requests for production). Thus, not only does Marvel bear the normal obligation of producing documents, the Federal Rules call for such production to be organized and categorized as well.

**TOBEROFF & ASSOCIATES, P.C.**

March 22, 2022
Molly M. Lens
Page: 3

Marvel's brazen document dump is a clear and unacceptable contravention of the Federal Rules and of Defendants' discovery rights thereunder.

It is also concerning that, in taking this presumptuous shortcut, Marvel violates each defendant's privacy rights by disclosing their confidential information to non-parties. For example, when Marvel produces Larry Lieber's requested tax documents in an agglomerated document dump, each of the defendants in the other four actions would then have full access to Mr. Lieber's sensitive information. Marvel must produce an individualized production that corresponds to each defendant's requests for production, just like any other party.

**Marvel's Incongruous Definitions**

    **A.  RFP Nos. 1, 2, 6, 7, 13, 26, and 39.**

Marvel asserted several meritless objections to the RFP definitions. For example, Marvel objected to the RFPs' definition of "AGREEMENT" on the grounds of overbreadth and burden and then proceeded to unilaterally and improperly rewrite the definition to mean only "signed agreements or contracts." Marvel's objections are disingenuous and emblematic of Marvel's obstruction of the relevant discovery. Defendants' definition of "AGREEMENT" in their RFPs is the **same exact definition** as the one used by Marvel in its requests for production to Defendants.

*See* RFPs' Definition:

> 9.   "AGREEMENT" and "AGREEMENTS" as used herein refer to any contract, whether written or oral, express or implied.

*Compare* Marvel's Definition:

> 1.   "Agreement" means any contract, whether written or oral, express or implied.

Such gamesmanship demonstrates a clear lack of good faith on the part of Marvel and its counsel. Marvel's restricted definition of "Agreement" improperly tainted its responses to RFP Nos. 1, 2, 6, 7, 13, 26, and 39. Accordingly, Marvel must amend its responses and produce all documents in its possession, custody, or control responsive to the above-enumerated requests.

    **B.  RFP Nos. 1, 2, 5, 6, 11, 14, 17, 18, 21, 22, 24-32, 36-38, 51, and 52.**

Next, Marvel undertook to unilaterally redefine the term "MARVEL" in the RFPs. The RFPs defined "MARVEL" as Marvel Characters, Inc. plus "any past or present predecessors-in-interest or successors-in-interest," and those acting on their behalf. Marvel objected on grounds of overbreadth and burden but again, the definition Marvel provided in its requests to Defendants is materially *the same*.

**TOBEROFF & ASSOCIATES, P.C.**

March 22, 2022
Molly M. Lens
Page: 4

*See* RFPs' Definition:

> 2.  "MARVEL" as used herein, refers to Plaintiff and Counterclaim-Defendant Marvel Characters, Inc., and <u>any past or present predecessors-in-interest or successors-in-interest</u>, and any other person or persons acting on their behalf, including, but not limited to, past or present agents, managers, representatives, advisors, employees, attorneys, accountants, investigators and insurance companies, both singularly and cumulatively.

*Compare* Marvel's Definition:

> 9.  "Marvel" means MCI and/or any related or predecessor entities, Including Atlas Magazines, Inc., Cadence Industries Corporation, Canam Publishers Sales Corp., Magazine Management Co., Inc., Marvel Comics Group, Marvel Entertainment Group, Inc., Marvel Comics, Inc., Non-Pareil Publishing Corp., Perfect Film & Chemical Corporation, and Vista Publications, Inc., and, where applicable, their present and former officers, directors, employees, agents, partners, subsidiaries, members, and affiliates.

As such, there is no good faith basis on which Marvel can object to Defendants' definition. Marvel's meritless objections appear to have improperly altered Marvel's responses to RFP Nos. 1, 2, 5, 6, 11, 14, 17, 18, 21, 22, 24-32, 36-38, 51, and 52. Marvel must amend its responses accordingly and produce all documents in its possession, custody, or control responsive to these RFPs.

**Marvel's Improper Limitation of the Relevant Time Periods**

    **A.  RFP Nos. 1 and 2.**

RFP Nos. 1 and 2 requested documents memorializing any agreements, negotiations, or drafts of agreements between Gene Colan ("COLAN") and MARVEL. In response to each RFP, Marvel unilaterally reduced the scope of time for its production to 1966-1976. Marvel's abridgment is improper. *Any* agreement or negotiations between COLAN and MARVEL is likely to bear directly on the parties' working relationship, claims, and defenses and is well within the bounds of discovery under Rule 34, F.R.C.P. Marvel's limitation as to what it deems the most relevant time period is inappropriate. Marvel must produce all agreements, negotiations, or drafts of agreements with COLAN in Marvel's possession, custody, or control.

**TOBEROFF & ASSOCIATES, P.C.**

March 22, 2022
Molly M. Lens
Page: 5

    **B.  RFP Nos. 7, 13, 24, 25, 27, 29, and 30.**

RFP Nos. 7, 13, 24, 25, and 27 clearly requested relevant documents "including but not limited to," the years 1966-1976. In response to each of these requests, Marvel improperly limited its response to documents from *only* 1966-1976. In this case, the relevance of Stan Lee and Martin Goodman's relationships with COPYRIGHT CLAIMANTS is clear. Moreover, COLAN's relationship with MARVEL over time and the conditions under which he sold his work to MARVEL are inescapably relevant. COLAN began working with MARVEL in 1946 and as such, a production limited to only 1966-1976 is inadequate. Marvel must agree to make a full production of all documents in its possession, custody, or control responsive to RFP Nos. 7, 13, 24, 25, and 27.

In addition, RFP No. 29 requested evidence of payments by MARVEL to Stan Lee in the 1960s and 1970s, including but not limited to 1966-1976. RFP No. 30 requested evidence of MARVEL's tax treatment of payments to Stan Lee in the 1960s and 1970s, including but not limited to 1966-1976. Marvel again limited its response to 1966-1976. Payments to Stan Lee and MARVEL's tax treatment of him are plainly relevant. Marvel has no basis to restrict its production to a few of its preferred years. Marvel must agree to make a full production of all documents in its possession, custody, or control responsive to RFP Nos. 7, 13, 24, 25, 27, 29, and 30.

**<u>Marvel's Improper Mutation of RFPs</u>**

In numerous other instances, Marvel took it upon itself to rewrite the RFPs to fit its own ends, severely limiting Defendants' access to information.

    **A.  RFP No. 7.**

RFP No. 7 requested documents evidencing Stan Lee's employment by COPYRIGHT CLAIMANTS. In an improper copy-and-pasted response, Marvel objected to the word "evidencing," despite the RFP not having used the word.

Regardless, Marvel must produce documents that reflect or indicate that Stan Lee was an employee of COPYRIGHT CLAIMANTS. Such documents might, for example, include hiring documents, tax documents, and/or communications wherein the named entities held Stan Lee out as an employee. Marvel's response to RFP No. 7 is inadequate because it limits Marvel's production merely to signed employment agreements between Stan Lee and COPYRIGHT CLAIMANTS. This RFP is clear and seeks information relevant to Defendants' claims and defenses. As such, Marvel must amend its response and fully produce all documents in its possession, custody, or control.

    **B.  RFP No. 13.**

In addition, RFP No. 13 requested documents evidencing the relationship between Martin Goodman and COPYRIGHT CLAIMANTS. Marvel's response indicated that it would produce only Agreements (with Marvel's narrowed definition of the term) between the identified entities and Goodman that relate to the provision of services. Again, there is no basis for Marvel to unilaterally manufacture

**TOBEROFF & ASSOCIATES, P.C.**

March 22, 2022
Molly M. Lens
Page: 6

this overly restrictive interpretation of Defendants' clear and specific request. Therefore, Marvel must amend its response and fully produce all documents in its possession, custody, or control responsive to RFP No. 13.

**Marvel's Nonresponsive Answers**

On numerous occasions, Marvel provided nonresponsive answers, sidestepping clear and specific RFPs. For example, RFP Nos. 12 and 14 requested documents that evidence the PERSON(S) which own each COPYRIGHT CLAIMANT and documents sufficient to show those entities' relationship to MARVEL.

In response, Marvel, blatantly evading the RFPs, stated it would provide documents showing that it owned the copyrights to the Works. Marvel's response is completely incongruent and nonresponsive. As such, Marvel must amend its responses to confirm that it will fully produce all documents in its possession, custody, or control responsive to RFP Nos. 12 and 14.

**Marvel's Royalty Payments**

RFP No. 51 requested documents concerning any royalty payments MARVEL made to COLAN. Marvel objected that "royalties" was vague, and stated that it would produce documents reflecting "any payments to Colan in connection with his work for MCI from 1966 to 1976."

First, Marvel is in the entertainment business and has produced countless movies, tv shows, and comic books over the past decades and as such, there is no doubt that Marvel knows what a "royalty" is. Regardless, a royalty, given its normal meaning, is defined as a sum of money paid to a creator for each copy of his/her work that is sold, produced, or performed. Second, Marvel's response is problematic because it seeks to limit the relevant periods of time for which it will produce documents. The RFP sought documents relating to *all* royalties paid to COLAN without limitation as to time. Marvel must amend its responses to RFP No. 51 to confirm that it will produce all documents in its possession, custody, or control concerning royalties paid to COLAN.

**Marvel's Payments to Other Creators**

RFP Nos. 21 and 31 requested payment and tax treatment information for writers and artists other than COLAN and for agreements between MARVEL and those writers and artists during the 1960s and 1970s. Such information is plainly relevant as it serves to contextualize Marvel's employment and payment practices, thus providing greater clarity as to the nature of COLAN's relationship with MARVEL. Marvel requested to meet and confer with Defendants for assistance in determining which writers and artists to search for, even though Marvel well knows which writers and artists worked with it in the 1960s and 1970s. We provide the following names as a nonexhaustive list to assist Marvel in searching for documents responsive to these requests: Stan Lee, Don Rico, Steve Ditko, Don Heck, Larry Lieber, Dick Ayers, Sam Rosen, Art Simek, Joe Sinnott, John Romita, Gary Friedrich, Bill Everett, Joe Maneely, Joe Simon, Jim Steranko, Neal Adams, Gaspar Saladino, Vince Colletta, Len Wein, Jack Abel, Glynis Oliver, Gerry Conway, Ross Andru, Frank Giacoia, John Costanza, Marv Wolfman, Mike Ploog,

**TOBEROFF & ASSOCIATES, P.C.**

March 22, 2022
Molly M. Lens
Page: 7

Archie Goodwin, Steve Englehart, Jim Starlin, Al Milgrom, Larry Hama, Doug Moench, Tony Isabella, Bill Mantlo, Ed Hannigan, Gray Morrow, Steve Gan, Dan Adkins, Roy Thomas, Alan Weiss, Tom Orzechowski, Mike Friedrich, and Mike Esposito.

### Marvel Must Produce Relevant Documents

RFP Nos. 17, 18 and 50 requested documents authored, authorized, or published by MARVEL about MARVEL's history and MARVEL's press releases and interviews relating to COLAN and his work. The potential relevance of such documents is self-evident. In response, Marvel stated that it would produce documents "it intends to rely on in this lawsuit." As Marvel and its counsel know, whether a party intends to rely on a document is not the standard that determines which documents are relevant and discoverable. The "test remains whether evidence is relevant to *any party's* claim or defense." *Fischer v. Forrest*, 2017 U.S. Dist. LEXIS 28102, at *7-9 (S.D.N.Y. Feb. 28, 2017) (emphasis added, quotations omitted); *Moore v. Superway Logistics, Inc.*, 2019 U.S. Dist. LEXIS 90111, at *19-20 (E.D. Cal. May 28, 2019) (quoting Fed. R. Civ. P. 26 Advis. Comm. Notes to 2015 Amendment). Marvel must produce responsive documents in its possession, custody, or control that relate to Marvel's and Defendants' claims or defenses, not merely those that Marvel intends to use to support its own case. Marvel must provide a compliant response and produce all documents in its possession, custody, or control responsive to RFP Nos. 17, 18 and 50, not merely those that it wants to rely upon.

### Marvel Must Produce a Privilege Log

We note that Marvel has refused to produce materials on the basis of various privileges but has failed to produce a privilege log in contravention of Fed. R. Civ. P. 26(b)(5). Marvel must promptly produce a privilege log in accordance with the applicable rules or amend its responses to indicate that no documents are being withheld on those grounds.

\*   \*   \*

We request that the parties meet and confer on these matters during the conference currently set for Thursday, March 24 at 2:30 p.m. PST.

Nothing in this letter should be construed as a waiver or limitation of any of Defendants' rights or remedies, all of which are reserved.

Very truly yours,

Jaymie Parkkinen